(Decided March 31st, 1897).

---

## WILLIAM P. POWELL AND OTHERS *vs.* WILLIAM J. WILSON AND WILLIAM A. HANEY.

*Oyster Lots—Rights of Riparian Owner in Creeks Less Than 100 Yards Wide at the Mouth—Vacating a Location—Jurisdiction of Equity—Removal of Bedded Oysters.*

Equity has jurisdiction to protect and enforce the privilege or franchise conferred by statute upon riparian owners in the matter of bedding oysters in navigable waters adjoining their lands.

The Act of 1886, chap. 296, sec. 44, provided that any citizen of the State should have the right to locate and appropriate one lot of not more than five acres in the navigable waters of the State for the purpose of planting oysters, after notice to the riparian owner, and that twelve months peaceable possession of the same should constitute a good title thereto. Section 45 of the Act provided that if any creek or inlet of greater width than 100 yards at low water mark should make into the land, then the riparian owners should have the exclusive right to the use of the creek for bedding oysters so

soon as the mouth of the same should become less than 100 yards
in width.   These provisions were substantially re-enacted by the
Act of 1894, chap. 380, secs. 46 and 47.   In 1887 the defendants
located an oyster lot in a creek or estuary opposite plaintiffs' land.
The mouth of the creek was then more than 100 yards wide.   In
1896 the mouth of the creek became, in the course of nature, less
than 100 yards wide.   Plaintiffs thereupon notified defendants that
they claimed the exclusive right, as riparian owners, to the use of
the creek under the statute, and filed a bill praying that defendants'
location of the oyster lot be annulled and defendants enjoined from
using the same for such purpose.   *Held*,

1st. That there is no conflict between the two sections of the statute,
but that when defendants located the lot they did so subject to the
contingency that the mouth of the creek might thereafter become
less than 100 yards wide, and upon the happening of that contin-
gency the rights of the defendants were superseded by the exclu-
sive right then given to the plaintiffs as riparian owners, and that
the plaintiffs are entitled to the relief asked for.

2nd. That the defendants are entitled to remove their oysters from the
lot within a reasonable time.

Appeal from a decree of the Circuit Court for St. Mary's
County (CRANE, J.), dismissing the bill of complaint.   The
facts are these : On or about the 6th day of October, 1887,
when St. Jerome's Creek, in St. Mary's County, was more
than one hundred yards wide at its mouth, the appellees
located in it a lot of 4 16-100 acres of oyster land, oppo-
site the tract of land bordering upon it, known by the
name of " Bar Neck," containing one hundred acres, and
belonging to the appellants, and between their land and the
middle of the stream, for the purpose of bedding or sowing
oysters therein, and they did sow some oysters therein.   In
the early winter and spring of 1896, and shortly before the
filing of the bill in this case, St. Jerome's Creek became less
than one hundred yards wide at its mouth, not by artificial
means, but by due and regular course of nature.   On the
22d of April, 1896, the appellants gave notice to the ap-
pellees that the creek had become less than one hundred
yards wide at its mouth, and that they claimed the exclu-
sive privilege of using the land embraced in the location
previously made by the appellees for the purpose of pre-

serving, depositing, bedding or sowing oysters or other shell-fish therein, and notifying the appellees that they must not further use their said location for that purpose.    Notwithstanding this notice, the appellees, on the 23d day of April, 1896, and subsequently, on the 25th of April, 1896, entered upon said location and deposited oysters therein and claimed and asserted the right to continue to deposit them there.

Thereupon, on the 1st of May, 1896, the appellants filed their bill alleging these facts and praying that the defendants' location and appropriation of said oyster lot made by them on the 6th of October, 1887, should be annulled and set aside, and that the stakes, bushes and other marks of said location should be removed and that the appellees should be enjoined from preserving, depositing, bedding or sowing oysters or other shell fish upon said location.    An injunction was issued as prayed.    On the 29th of May, 1896, the appellees filed their answer and moved to dissolve the injunction.    Considerable testimony was taken, and on the 26th of June, 1896, the Court below filed an opinion and order dissolving the injunction and dismissing the bill.

The opinion of the Court below states the allegations of the pleadings and finds as matter of fact, "that the mouth of St. Jerome's Creek is less than one hundred yards wide, and has become so within the last few months"—also, "that the recent closing of the mouth of said creek was not caused by the obstructions and excavations, as alleged in the answer, but that the closing had been going on gradually for many years, and was due entirely to natural causes." The Court below also held that it had as a Court of Equity full jurisdiction to try and determine the issues joined in the case, and that the defence taken in the 6th paragraph of the answer, that "the remedy of the plaintiffs, if any they have, is exclusively at law," was not well taken.    The learned Judge in his opinion, then holds that notwithstanding the facts so found by the Court, the right of the appellees to maintain the location of the oyster lot made by them on the

6th of October, 1887, was superior to the riparian rights of the appellants, as owners of the land bordering on the creek, upon the true construction and effect of sections 46 and 47 of the General Oyster Law of 1894, chapter 380.

At the time the oyster lot in question was located, viz., in October, 1887, the Act of 1886, chapter 296 was in force, and defined the then rights and obligations of the parties. Section 44 of this Act was repealed and re-enacted with an amendment by the Act of 1888, chapter 505, and as thus amended was codified in Article 72 of the Code of 1888. Section 39 of that Article is section 44 of the Act of 1886, as re-enacted by the Act of 1888, chapter 505. Section 40 of that Article is section 44 of the original Act of 1886. The Act of 1894, chapter 380, and its sections 46 and 47 will be found to be almost identical in language with section 44 of the original Act of 1886, chapter 296, as amended by the Act of 1888, chapter 505, and section 45 of the original Act of 1886, reproduced as sections 39 and 40 of Article 72 of the Code.

The cause was argued before McSHERRY, C. J., BRYAN, FOWLER, BRISCOE, BOYD and RUSSUM, JJ.

*B. Harris Camalier* and *Wm. T. Brantly* (with whom were *John Prentiss Poe* and *Robert C. Combs* on the brief), for the appellants.

The question narrows itself down to the inquiry as to what is the true interpretation of sections 39 and 40 of Article 72 of the Code, which now stand as sections 46 and 47 of the Act of 1894, chapter 380. The Court below was of opinion that "there is a clear and manifest conflict between these two sections," and that in such conflict, "as between the parties to this cause, both of the above sections should be given effect; and finding that the grant of the franchise or privilege had been made, and the right to locate under it had been perfected by the plaintiffs (defendants), long before the creek's mouth became less than one hundred yards

wide," had " no hesitation in holding that the rights and privileges of the defendants are prior, superior and paramount to those of the plaintiffs in the said located grounds." Now, while the Court here *declares* that there exists this " *clear and manifest conflict* between these two sections," what the Court *does* is to give effect to section 46 *alone*, and to ignore section 47 *altogether*. We do not find any conflict or repugnancy whatever between these two sections, nor does it seem to us that a case of implied repeal is presented, growing out of the supposed irreconcilable conflict between the latter section and the former. On the contrary, both sections may well stand together; and giving effect to both of them, the conclusion which, we respectfully submit, should be reached, is directly the opposite of that arrived at by the Court below.

The Act of 1894, chap. 380, sec. 47, provides for the following classes of cases : First. If any creek, not exceeding one hundred yards in breadth *at its mouth*, at low water, make into the lands of the riparian owner, he shall have the *exclusive* right to the use of such creek, and no five-acre lot can be lawfully located therein, under section 46, by any third party. In such case, the fact that the *mouth* of the creek does not exceed one hundred yards gives this *exclusive* right to the land owner. Second. If any *creek* of greater width than one hundred yards at low water, make into the lands of the riparian owner, he shall have the *exclusive* right to use the *creek*, when its *mouth shall become* one hundred yards or less in width, even although the *creek* itself continue to be wider than one hundred yards. Third. When the *mouth* of any creek is more than one hundred yards wide at low water and the *creek* itself is *also* more than one hundred yards wide at low water, the riparian owner shall have the *exclusive* right to its use, as soon as the *creek* in making into his land shall become one hundred yards or less in width at low water, even although the *mouth* itself shall continue to be more than one hundred yards wide, and even although such creek may not be included in the lines of any patent.

In all three of these cases, the right of the riparian owner
is to extend to the middle of the creek.    In the case now
before us, the mouth of St. Jerome's Creek was *more* than
one hundred yards wide, on the 6th of October, 1887, when
the appellees located their oyster lot.

When the bill was filed, its *mouth* had become *less* than
one hundred yards, viz., eighty-four yards wide, and the
question is whether the right which the appellees acquired
in October, 1887, when the *mouth* of the creek was *more*
than one hundred yards wide, ceased to exist as soon as its
*mouth* became *less* than one hundred yards wide.    The ques-
tion, it is respectfully submitted, is plainly answered by the
express provisions of section 47.    The case falls under the
second class above mentioned, and the language of the sec-
tion applicable to such cases is that the riparian owner shall
have the *exclusive* right to use the creek when its *mouth*
shall become one hundred yards or less in width.    It must
be conceded that as the property stands to-day, no five-acre
lot could *now* be lawfully located within the waters of the
creek, under the provisions of section 46 ; and our conten-
tion is that when the appellees located their lot, they did so
subject to the contingency that the *mouth* of the creek might
thereafter become less than one hundred yards wide, and
that *when* it did become less than one hundred yards wide,
their rights should cease and be superseded by the exclu-
sive right given in that event, to the riparian owner by the
language of section 47.·    All parties lecating lots under sec-
tion 46 must be assumed to contemplate the possibility that
the *mouth* of the creek in which they locate may become
less than one hundred yards wide, and that so soon as its
*mouth* does thus become less than one hundred yards wide,
their rights will be extinguished.    In other words, they
take a title good until such contingency happens, but de-
feasible upon the happening of such contingency.    The two
sections are, therefore, perfectly harmonious, and the title
of the appellees, good when they located their lot, and re-
maining good until the mouth of the creek became con-

tracted, by natural causes, to less than one hundred yards, terminated when that event happened, and gave way to the exclusive right of the land owner, which then instantly sprang into existence. There is no hardship in this result, for it is precisely what the statute notified the parties might happen, and subject to which they located their lot.

*Daniel C. Hammett* and *Daniel R. Magruder* (with whom was *Joseph H. Ching* on the brief), for the appellees.

1. The appellees will contend that the order and decree dissolving the injunction and dismissing the bill will be affirmed, if the defendants were entitled to such a result, even although the precise grounds upon which the Court bases its action may not be correct.

2. The answer expressly objects to the relief sought on the ground of want of jurisdiction and that the remedy is at law, and the appellees insist that no ground is presented by the bill for the interposition of a Court of Equity : (*a.*) The only thing done or threatened is the placing of oysters on the located lot. This would seem to be a benefit to the plaintiffs, the very thing they want done. There is no suggestion of any removal or threatened removal of oysters, and if there should be any such it would be met and punished by the criminal law relating to this subject. Code, Art. 72, secs. 39, 40, 41; Act of 1896, ch. 418, secs. 46, 47, 48. (*b.*) The acts complained of amount, at most, to but a trespass, without any of the attending circumstances or effects which would warrant the interference of a Court of Equity, the right to redress at law being ample. There is no question of multiplicity of suits, or of irreparable injury, or of destruction of the property, or of inability to obtain full relief at law, the only ground upon which the authorities say relief may be claimed in cases of trespass. *Shipley* v. *Ritter*, 7 Md. 408 ; *Pfeltz* v. *Pfeltz*, 14 Md. 376 ; *Cockey* v. *Carroll*, 4 Md. Ch. Dec. 344 ; *Davis* v. *Reed*, 14 Md. 152 ; *Fort* v. *Groves*, 29 Md. 188 ; *Nicodemus* v. *Nicodemus*, 41 Md. 529. (*c.*) The remedy at law being ade-

quate no recourse can be had to a Court of Equity. *Clayton* v. *Carey*, 4 Md. 26 ; *O'Neal* v. *Bridge Co.*, 18 Md. 1 ; *Richardson* v. *Stillinger*, 12 G. & J. 477 ; *Ridgeway* v. *Toram*, 2 Md. Ch. Dec. 303 ; *Lawson* v. *Davis*, 7 G. 347. (*d.*) The location of the oyster lot of the defendants, if it has become inoperative, by reason of the succeeding rights of the plaintiffs attaching through the narrowing of the creek's mouth, cannot in any way interfere with any right of the plaintiffs, and is in no way nor in any sense a cloud upon any title of the plaintiffs, and is not even alleged to be so, and hence there can be no aid required on this ground. Possession must, besides, be alleged and proved to justify this remedy, and there is no such averment ; but quite the contrary. *Livingston* v. *Hall*, 73 Md. 386 ; *McCoy* v. *Johnson*, 70 Md. 490 ; *Polk* v. *Pendleton*, 31 Md. 118 ; *Crook* v. *Brown*, 11 Md. 160.

3. We contend that the Court below was right in holding that as the defendants' location had been validly made under the law authorizing it, long before the creek's mouth became less than 100 yards in width, the rights and privileges of the defendants are prior, superior and paramount to those of the plaintiffs in the said located grounds. The law in force when this location of October, 1887, was made was the Act of 1886, ch. 296, sec. 44 (similar in terms to the provisions of the Code, Art. 72, sec. 39, and of the Act of 1894, chap. 380, sec. 46—the present law in force), which gave in the most full and ample manner to every male citizen of full age, the right, after due notice to the owner of the land bordering on the water, to locate and appropriate in any of the waters of said State not located or appropriated, five acres for preserving, &c., oysters and other shell-fish ; and it is further provided, that when such location shall be made, described, bounded and recorded in the manner directed, twelve months peaceable possession *shall constitute a good and sufficient title thereto;* and the owner of the land bordering on the water is especially bound, for he had the prior right to make the location, and

only upon due notice to him and his failure to locate, could the other citizen gain the right to make the location; and there is no suggestion in the law that a location so duly made should be interfered with by the subsequent narrowing of the mouth of the creek, cove or inlet which the location should be made.

4. The evidence does not seem to make it so clear as it is assumed by the Court below to be, that the filling in of the mouth of the creek is due to natural causes alone. On the contrary the weight of evidence seems to show that the rapid filling in of the mouth of the creek has been greatly accelerated if not mainly caused by the cutting of a channel across the mouth of the creek, the driving of stakes and deposit of shells at or near the mouth; and if this be the case it would hardly seem equitable that the defendants should be deprived of their rights and privileges by these artificial means—the law seeming to contemplate only the result of the ordinary course of nature.

BRISCOE, J., delivered the opinion of the Court.

The appellants filed a bill in the Circuit Court for St. Mary's County to vacate and set aside the location of a certain oyster lot, located in the waters of St. Jerome's Creek, in that county, and to enjoin the appellees from depositing and bedding oysters or other shell-fish therein. The bill alleges that the appellants are the owners of a tract of land lying on St. Jerome's Creek, called "Bar Neck," containing one hundred acres, more or less; that this creek has lately become and is now less than one hundred yards wide at its mouth, and that they are entitled to the exclusive use of the creek adjoining their lands and to the middle of its stream for the purpose of bedding and planting oysters. It further avers that the appellees, on or about the 6th of October, 1887, when the creek was more than one hundred yards wide at its mouth, located four and 16-100 acres of oyster land, opposite the land of the appellants and between it and the middle of the stream, for

the purpose of planting oysters; that notice as to the con-
traction of the creek at its mouth had been duly given, but
the appellees subsequently entered thereon and now assert
a title to this located ground under section 46 of the Acts
of 1894, chapter 380. An injunction was granted upon
the allegations of the bill, but after a hearing upon bill, an-
swer and proof, it was dissolved and the bill dismissed. It
is from this order that the appeal has been taken.

There is but little dispute upon the facts, as disclosed by
the record, but the main questions involved turn upon the
interpretation of sections 46 and 47 of the Act of 1894,
chapter 380, known as the General Oyster Law of the
State.

It is admitted that the mouth of St. Jerome's Creek was
more than one hundred yards wide at its mouth when the
oyster lot in question was located in 1887, and it appears
from the proof to have contracted to the width of eighty-
four yards since that date. The question then is, are the
rights which the appellees acquired to this lot in 1887
superior and paramount to the rights of the riparian owners,
the appellants? And this depends, as we have said, upon
the meaning and effect to be given to sections 46 and 47 of
the Acts of 1894, chapter 380. By section 46 of the Act
of 1894, which is for the purposes of this case substantially
the same as the law in force at the time of the location of
the lot in dispute, it is provided that "the owner of any
land bordering on any of the navigable waters of this State,
the lines of which extend into and are covered by said
waters, shall have the exclusive privilege of using the same
for protecting, sowing, bedding or depositing oysters or other
shell-fish within the lines of his own land; and any owner of
land lying and bordering upon any of the waters of this State
shall have power to locate and appropriate in any of the
waters adjoining his lands one lot of five acres for the pur-
pose of protecting, preserving, depositing, bedding or sow-
ing oysters or other shell-fish; and any male or female citi-
zen of full age, of the county wherein he or she resides,

shall have power to locate, and appropriate, and hold one lot of five acres and no more in any waters in this State not located; provided thirty days' notice in writing shall be given the owner or occupant of land bordering on said waters proposed to be located, that the owner or occupant may have priority of claim, * * and that twelve months peaceable possession of all location of oyster ground, under the laws of this State, shall constitute good and sufficient title thereto." And by section 47 it is further provided that " if any creek, cove or inlet not exceeding one hundred yards at low water in breadth at its mouth make into the land, or if any creek, cove or inlet of greater width than one hundred yards at low water mark make into the lands, the owner or other lawful occupant shall have the exclusive right to use such creek, cove or inlet when the mouth of said creek, cove or inlet is one hundred yards or less in width; and when the said creek, cove or inlet is more than one hundred yards wide at its mouth at low water, the said owner or other lawful occupant shall have exclusive right to use such creek, cove or inlet so soon as said creek, cove or inlet in making into said land or lands shall become one hundred yards in width at low water, for preserving, depositing, bedding or sowing oysters or other shell fish, although such cove, creek or inlet may not be included in the lines of any patent; and in all such cases such right of the riparian proprietor shall extend to the middle of such creek, cove or inlet."

We find no difficulty in reconciling these two sections and giving to each its proper effect. In the case of *Hess* v. *Muir et al.*, 65 Md. 609, this Court in speaking of the statute regulating the oyster fisheries of the State, says, the right to locate oyster ground " is not a grant of an indefeasible right or estate in the lot thus authorized to be located and planted with oysters. It is simply a conditional or qualified license or franchise, revocable at the will and pleasure of the State. It is neither inheritable nor transferable but is purely a personal privilege in the party locating the lot." Now, while

it is conceded that by section 46, the appellees' title was good at the date of its location, it is earnestly insisted, and the Court below so held, that the possession by the appellees of this lot for more than the statutory period of twelve months, gave them a good and sufficient title thereto, notwithstanding the provisions of section 47, that when the creek, &c., is more than one hundred yards wide at its mouth at low water, the owner or· other lawful occupant shall have exclusive right to use such creek, so soon as the creek shall become one hundred yards in width.   To this interpretation of these sections we cannot agree.   In order to do that we should have to ignore section 47, and give effect alone to section 46.   The fundamental rule in the construction of statutes is, if two Acts are plainly repugnant to each other in any of their provisions the latter Act without any repealing clause, will operate to the extent of the repugnancy as a repeal of the first.   And this rule also applies to different sections of the same law, unless it appears from the whole Act, that the Legislature intended the prior section to remain in force.   *Smith* v. *School Commissioners*, 81 Md. 576.   We, however, fail to find any conflict between those two sections but think that they can stand together expressing a perfectly harmonious legislative intent.   And being of this opinion we fully agree with the contention of the appellant, as stated in his brief, that when the appellees located this lot under section 46, they did so, subject to the contingency that the mouth of the creek might thereafter become less than one hundred yards wide, and that when it did become less than one hundred yards wide, their rights should cease and be superseded by the exclusive right given in that event, to the riparian owner by the language of section 47.   The appellees, therefore, took a good title under sec. 46, but it was defeated upon the happening of the contingency provided for in sec. 47.

Upon the question of equity jurisdiction, we need only say, it is clear, that this case falls within that class of cases, in which the jurisdiction is exercised.   Mr. Pomeroy in his

work on *Equity Jurisprudence*, sec. 271, says, the jurisdiction is constantly exercised under a proper condition of facts, and enumerates as one of them, suits to restrain and remove private nuisances, especially when they are infringements upon some easement, as a water-right. And to the same effect are the cases of *McRoberts* v. *Washburne et al.*, 10 Minn. 29; *Britton, Admr.* v. *Hill*, 27 N. J. Eq. 391; *Ogden* v. *Gibbons*, 4 Johnson Ch. 150; *Goodsell* v. *Lawson et al*, 42 Md. 354.

As to the ownership of the oysters planted upon this lot, there can be no question, that the appellees would be entitled to remove them within a reasonable time. This question was ruled upon in the case of *Hess* v. *Muir et al.*, *supra*, where this Court said, " that if the party lawfully locating the lot, takes oysters from other localities and plants them in his lot, those oysters, with their increase, become his absolute property and he or his personal representatives or assignees may take them from the lot, within any reasonable time after the license or franchise is revoked or ended." *Angell on Tide-waters*, 137.

Being then of opinion, that the Court below erred in dissolving the injunction and dismissing the bill, the decree will be reversed and the cause remanded so that a decree may be passed in conformity with this opinion.

> *Decree reversed and cause remanded.*

(Decided March 31st, 1897).