## SMOOT SAND AND GRAVEL COMPANY *vs.* COLUMBIA GRANITE AND DREDGING CORPORATION.

*Navigable    Waters—Removal    of    Sand    and    Gravel—License from Riparian Owner.*

Code, art. 27, sec. 433, authorizing the removal of sand and gravel from navigable rivers by any riparian owner or by any person having a' contract with such owner, gives such right to the' owner only during his ownership, and the right of one under a contract with the owner ceases upon the transfer of the ownership to another.    pp. 388, 389

The beds of navigable rivers belong to the public, and owners of adjacent lands have no exclusive right thereto below low-water mark except as conferred by special grant from the State.    p. 388

The right to remove sand and gravel, conferred by Code, art. 27, sec. 433, is in the nature of a license or privilege to the riparian owner and those with whom he has a contract in writing, which may be revoked at any time by the Legislature.    p. 389

*Decided July 22nd, 1924.*

Appeal from the Circuit Court for Prince George's County, In Equity (DIGGES, C.J., and LOKER, J.).

Bill by the Columbia Granite and Dredging Corporation against the Smoot Land and Gravel Corporation. From a decree for plaintiff, defendant appeals. Reversed.

The cause was argued before PATTISON, URNER, ADKINS, OFFUTT, and BOND, JJ.

*D. K. Este Fisher* and *Wm. G. Johnson,* with whom was *Walter J. Mitchell* on the brief, for the appellant.

*F. Snowden Hill,* for the appellee.

PATTISON, J., delivered the opinion of the Court.

John Swift, the owner, in fee simple, of a farm in Prince George's County, Maryland, containing 91.6 acres called "Ferry Farm," and situated on the Potomac River, caused the same to be sub-divided into seven lots, numbered one to seven inclusive. Lots 1, 6 and 7 border upon the Potomac River, while the others are located some distance therefrom.

John Swift, with his wife, by deed, dated December 13, 1913, conveyed in fee simple lot 1 to Charles Swift, lot 6 to William F. Swift and George Swift, trustees, and lot 7 to Mary Kintz; and by other deeds of the same date he conveyed lots 2, 3, 4 and 5 to the respective grantees therein named, but as these last named lots are not in any way involved in, or connected with, the controversy under consideration, no further reference will be made to them.

The deeds for lots 1, 6 and 7 were duly executed, acknowledged, and recorded among the land records of Prince George's County, Maryland on the sixth day of January, 1914, and each of them described the land thereby conveyed by metes and bounds, courses and distances.

Mary A. Kintz and husband, thereafter, by deed dated September 7th, 1920, conveyed lot 7 to Wilmer E. Swift, in fee simple, which deed was duly executed, acknowledged and recorded among said land records. Lots 1, 6 and 7, which we have said border upon the Potomac River, constitute the whole front thereon of "Ferry Farm." .

Thereafter on July 1st, 1921, George, William F., Charles H., and Wilmer E. Swift, by an instrument of writing called a lease, did "grant and convey unto the party of the second part (the appellee, the Columbia Granite and Dredging Corporation), its successors or assigns, for the term of five years from the 24th day of June, 1922, the exclusive right, to dig, dredge and carry away sand, gravel and other like materials from that portion of the bed of the Potomac River up to low water mark, extending and lying in front of the property of the party of the first part (the lessors or grantors) situated in Prince George's County, State of Maryland, said property

being known as 'Ferry Farm,' * * * together with the right to exercise any and all privileges with respect to dredging and carrying away materials from the said portion of the bed of the Potomac River which the parties of the first part, their heirs or assigns, have or may have by virtue of the ownership of the said tract of land or otherwise," with the further privilege to the lessees or grantees "to renew the within lease upon the same terms and conditions upon the expiration of the said term of five years for a further term of three or five years."

After the execution of the purported lease, the appellee started to dredge and remove sand and gravel from the bed of the river at the place described in said lease or writing, and continued to dredge and remove sand and gravel therefrom, when, on the 14th day of April, 1923, the appellant, the Smoot Sand and Gravel Corporation, by valid conveyances from the owners thereof at that time, became seised and possessed, in fee simple, of the "Ferry Farm," including lots 1, 6 and 7 which, as we have said, constitute the entire front of said farm on the Potomac River; and after becoming so seised and possessed of said farm, the appellant, by virtue of its supposed riparian rights, dredged and removed and continued to dredge and remove sand and gravel from the river bed between low water mark on the shores of lots 1 and 7 and the outer line of the channel of said river, whereas the exclusive right to dredge and remove sand and gravel therefrom had been granted by the so-called lease to the appellee, and the appellee, to prevent the appellant from further interfering with its alleged right, filed its bill in this case alleging the facts stated and asking that the appellant corporation be enjoined "from digging, dredging, taking or removing any sand or gravel, or both, in or upon the said bed or bottom of the said Potomac River opposite said lots 1 and 7 of said 'Ferry Farm,' " as described in the bill.

The defendant corporation filed its answer to the bill, in which it admitted the material facts alleged therein. The case was then heard upon bill and answer and a decree was

passed granting the injunction as prayed. From that decree the defendant has appealed to this Court.

The plaintiff based its claim to an injunction upon its alleged exclusive right to dredge and remove sand and gravel from the bed of the river off the shore of the "Ferry Farm," at the place named in the bill, granted to it by George Swift and others under the aforesaid instrument of writing called a lease, executed by them on said first day of July, 1921, at which time they were the owners of lots 1, 6 and 7 of the "Ferry Farm." The power and authority of said grantors or lessors to grant such right was conferred upon them, as claimed by the plaintiff, by section 433 of article 27 of the Code of Public General Laws, of this State, which is as follows:

> "It shall not be lawful for any person to dig, dredge, take and carry away any sand, gravel or other material from the bed of any of the navigable rivers, creeks or branches of this State, under a penalty of a fine not exceeding three hundred ($300) dollars, and confiscation of the boat, vessel, dredge and implements used in digging, dredging and carrying away such sand, gravel or other material, and imprisonment in the county jail for a period not exceeding six months, in the discretion of the court; * * * provided, however, that *it shall be lawful for any riparian owner of lands bordering on said rivers, creeks or branches, or for any person or corporation with whom such owner shall have a contract in writing for the purpose, or for the agents, servants or employees of such person or corporation* to dig, dredge, take and carry away sand, gravel or other material from the bed of said river opposite said lands from high-water mark on the shore bordering on said lands to the outer line of the channel nearest said shore, subject to the laws of the United States relating to navigation."

It is contended by the appellant that the right, if any, which passed to the appellee, by said alleged grant from George Swift and others, owners, at that time, of the "Ferry

Farm," to dredge and remove sand and gravel from the bed of the river off its shore, terminated when the so-called grantors ceased to be the owners of said farm, or the parts of it bordering upon the river, and that the appellant, at such time, as purchaser of the farm from the owners, succeeded to the right given to them, by the statute, to dredge and remove the sand and gravel off the shore of said property, which right, as claimed by the appellant, had been conferred by the owners upon the appellee to be enjoyed by it for a period, at most, not extending beyond the time in which the land remained the property of said owners, and this contention we think is consistent with the proper construction of the statute.

The beds of navigable rivers of this State unquestionably belong to the public and unless conferred by special grant from the State, owners of adjacent lands have no exclusive right thereto below low water mark. *Day* v. *Day,* 22 Md. 530.

It was to protect the interest of the State in the sand, gravel and other materials in the bed of the Potomac River that chapter 262 of the Acts of 1888 was passed. This was the first act passed relating to the subject, the title of which was: "An act to add a new section to article thirty of the Code of Public General Laws, title Crimes and Punishments." This act prohibited all persons from taking or removing sand or gravel or other materials from the bed of the Potomac River.

The succeeding Act of 1900, chapter 577, added thereto the proviso, "that it shall be lawful for any riparian owner of lands bordering on said Potomac River, or for any person or corporation with whom such owner shall have a contract in writing for the purpose, or for the agents, servants or employees of such person or corporation to dig, dredge, take and carry away sand, gravel or other material from the bed of said river opposite said lands from high water mark on the shore bordering on said lands to the outer line of the channel nearest said shore, subject to the laws of the United States relating to navigation."

The last act, chapter 426 of the Acts of 1906, the one now in force, differs from the Act of 1900, chapter 577, only in that it is made to apply to all rivers, creeks, etc., of the State.

It will thus be seen that the act which contains the above proviso, and the act upon which the appellee relies in support of the alleged exclusive right conferred upon it by the aforesaid instrument of writing or lease, is a criminal statute.

In the first act (chapter 362 of the Acts of 1888) *all persons* were included in the prohibitory clause of the statute, while in the second and last acts the riparian owner and those having a written contract with him were permitted to do the act or thing forbidden by the statute without becoming amenable to its provisions.

This permissive right was extended to him as the owner of the land and was to be exercised by him only so long as he remained the owner of it, and when it ceased to be his, the right, so conferred upon him as a riparian owner, passed to the succeeding owner, and this is true, though he, while owner of it, had allowed another, under the terms of the statute, to exercise the right, for he could not confer upon such person or corporation a right greater than that which he had acquired under the statute.

Moreover, it is hardly conceivable, if it were the intention of the Legislature to grant to a class of citizens of this State an exclusive right of the character claimed by the appellee for the one under consideration, that it would have done so by an amendment of a long standing criminal statute, by adding thereto a proviso, which it is said contains such grant, in that said class of citizens are permitted by it to do that which all other citizens of the State are prohibited from doing under the penalty above mentioned.

The right conferred by the statute in question is in the nature of a license or privilege to the riparian owner and those with whom he has a contract in writing, which may be revoked at any time by the Legislature. *Phipps* v. *State,* 22 Md. 380; *Hess* v. *Muir,* 65 Md. 587; *Powell* v. *Wilson,* 85 Md. 347; *Handy* v. *Maddot,* 85 Md. 547.

For the reason stated the learned court below we think erred in granting the injunction, and we will therefore reverse the decree appealed from and dismiss the bill.

*Decree reversed and bill dismissed, the costs to be paid by appellee.*