LEWIS E. SMOOT, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 32758.   Promulgated March 30, 1932.

*William M. Williams, Esq.,* and *H. P. Gately, Esq.,* for the petitioner.

*Maxwell M. Mahaney, Esq.,* for the respondent.

OPINION.

GOODRICH: We have previously held that where no petition is filed with this Board appealing from a deficiency notice issued by the Commissioner in accordance with section 274 of the Revenue Act of 1926, a second deficiency notice for the same taxable period may be issued. *Gilbert B. Goff*, 18 B. T. A. 283. Following that decision, we hold that respondent did not err in issuing the deficiency notice of October 8, 1927, that the notice was valid, and appeal therefrom lies to this Board.

The remaining issues, which in reality are one and the same, present greater difficulty. Respondent contends that petitioner is entitled to no deduction whatever from gross income on account of depletion. He asserts that under the Maryland statute whatever right petitioner may have acquired by the lease expired four days after its execution upon the conveyance of the property by Coleman to Rhodes, and that thereafter petitioner in carrying out his dredging operations was no more than a trespasser. He urges, moreover, that, even had the lease continued in effect during its full term, petitioner acquired by it no depletable interest in the deposits, but merely a license giving him a bare right to operate, which right or privilege could be terminated without his consent either by a conveyance of the property by the then owner or by legislative enactment.

The Maryland courts have long recognized that the state is the fee owner of the beds of navigable streams and that riparian owners have no exclusive right to such lands lying below high-water mark and can obtain no exclusive right to the use of the same except by express grant from the state. *Day* v. *Day*, 22 Md. 530 (1865). Under the common law no doubt the state could maintain an action for trespass against any one removing sand and gravel from the bed

of navigable streams. By a series of legislative enactments, the last of which was in 1906, such trespass was declared to be criminal and certain penalties were imposed upon any person who should:

\* \* \* dig, dredge, take or carry away any sand, gravel or other material from the bed of any of the navigable rivers, creeks or branches of this State \* \* \* *provided, however*, that it shall be lawful for any riparian owner of lands bordering on said rivers, creeks or branches, or for any person or corporation with whom such owner shall have a contract in writing for the purpose, or for the agents, servants, or employees of such person or corporation, to dig, dredge, take and carry away sand, gravel, or other material from the bed of said river opposite said lands from high water mark on the shore bordering on said lands to the outer line of the channel nearest said shore \* \* \*. [Section 433, Art. 27, Code 1914, Maryland.]

It is conceded that the Potomac River at the place where petitioner carried on his operations was a navigable river and the lands embraced by this lease were lands bordering on such river within the meaning of this statute, and that it therefore is applicable to this case.

In 1924 the Court of Appeals of Maryland handed down its decision in the case of *Smoot Sand & Gravel Corporation* v. *Columbia Granite & Dredging Corporation*, 146 Md. 384, by which it determined the nature of the right possessed by the riparian owner or his lessee under this section of the statute. The court held that the act made no grant of title to the bed of the river, or to the sand and gravel resting thereon, but that the right conferred was in the nature of a license or privilege revocable at any time by the legislature and was possessed only by the riparian owner, or those with whom he had contracted in writing.

Before considering respondent's contention that such a right of license or privilege is incapable of supporting an allowance for exhaustion of value, let us inquire as to the circumstances under which petitioner claims to be entitled to that right. The statute provides, and the court held, that sand and gravel may be recovered only by a riparian owner or by some person or corporation " with whom such owner shall have a contract in writing for the purpose." Here the contract of lease was executed by petitioner and Coleman, who was then the owner of the property. Within a few days thereafter, Coleman conveyed it to Rhodes, who was thereafter the owner.

Respondent contends that this conveyance nullified the lease, that thereafter Smoot had no contract with the owner of the property, and therefore had no right to continue his dredging operations for the recovery of the sand and gravel contiguous to the property. With this we can not agree, for we think the evidence shows clearly that Rhodes, by his conduct, ratified the contract and adopted it as his own. Consequently, we consider the lease contract valid and

binding upon Rhodes as the owner of the land, and as sufficient to meet the requirements of the Maryland statute. Moreover, we think Rhodes was estopped from denying his privity to the contract.

In *Wiggins Ferry Co.* v. *O. & M. Ry. Co.*, 142 U. S. 396, the court said, citing 2 Pom. Eq. Juris 965; *Chicago & Alton R. R.* v. *Chicago etc. Coal Co.*, 79 Ill. 121:

It is not necessary that a party should formally agree to be bound by the terms of a contract to which he is a stranger, if, having knowledge of such contract, he deliberately enters into relations with one of the parties, which are only consistent with the adoption of such contract. If a person conducts himself in such manner as to lead the other party to believe that he has made a contract his own, and his acts are only explicable upon that theory, he will not be permitted afterwards to repudiate any of its obligations.

This principle is applicable here. Rhodes, before the property was conveyed to him, had full knowledge of this lease. He was present when it was executed, as is evidenced by the fact he signed it as a witness. Rhodes received the consideration paid for its procurement—he got the entire benefit of the contract to the land owner. He permitted Smoot to operate under the lease for the full term thereof without question or objection, and during that time acknowledged that it granted to Smoot the exclusive right to remove the sand and gravel and served to prevent him from selling the fast land of the property to any one else, since such a conveyance would, by operation of law, terminate Smoot's rights. Beyond doubt, Rhodes' conduct discloses an adoption of this contract by him as his own, for he, having the right to accept or reject the contract when the property was conveyed to him, took and retained the benefits thereunder, thus ratifying the transaction and becoming bound by it beyond his power to avoid its effect. *Drakely* v. *Gregg*, 8 Wall. 242. Cf. *Winslow* v. *B. & O.*, 188 U. S. 646. And it has been repeatedly held that, by the acceptance of benefits thereunder, one may be estopped from questioning the existence, validity and effect of a contract. *Eareckson* v. *Rogers*, 112 Md. 160; *Read etc. Co.* v. *Nattans*, 130 Md. 465; *Manning* v. *Kansas Coal Co.*, 81 S. W. 140; *Maryland Casualty Co.* v. *Gates*, 290 Fed. 65, citing *Horn* v. *Cole*, 51 N. H. 287. This rule has been applied where it was objected that there was a noncompliance with the legal formalities relative to the contract. *Flower* v. *Barnckopf*, 11 L. R. A. 149, and cases there cited, and it here serves to prevent Rhodes from successfully denying his adoption of the contract and the existence of Smoot's rights thereunder. We conclude therefore that, in carrying on his dredging operations during the term of the lease, petitioner was not a trespasser, but was acting under a valid and effective contract between himself and the owner of the riparian property, as by statute required, and possessed the right of privilege or license conferred by such a contract.

We are supported further in this view by the well established rule that, where a contract has been adhered to and fully performed by the parties thereto, even though voidable as between them, its validity may not be attacked by a third person who is not a privy nor a successor in interest to one of the parties. Cf. *United States* v. *Andrews*, 207 U. S. 229; *Martin* v. *Pritchard*, 199 Pac. 846; Williston on Contracts, ¶¶529, 530; *National City Bank of Seattle*, 1 B. T. A. 139; *Denholm & McKay Co.*, 2 B. T. A. 444; *The Hub, Inc.*, 3 B. T. A. 1259; *Independent Aetna Sprinkler Co.*, 15 B. T. A. 521.

Respondent is in nowise a party to this contract. His attack is a collateral incident to a proceeding to determine the income-tax liability of one of the parties several years after the rights there-under have been fully exercised and the contractual obligations fully performed. We think he is precluded from questioning the validity of the contract.

As to petitioner's right to a depletion allowance, it is clear that he may not have an allowance for the value of the deposits themselves, for he had no property interest therein. Under the statute he had only the right of license or privilege to remove the deposits. But that right was property; it was of value, and both the right itself and the value thereof were subject to exhaustion, the one by the passing of time, since the right was granted for a definite period; the other by the removal of the deposit which gave rise to value. Under that right he could carry on his operations, remove and sell deposits of sand and gravel and thus realize a profit through its exercise. True, the right could be revoked at any time by means beyond his power to control—by a conveyance of the property to a new owner who did not assume the contract, or by legislative enactment. But neither of those contingencies affected the character of the right which, while it existed, was an exclusive one. They are material only in determining the value of the right. The parties have stipulated that the fair market value of an exclusive right for a period of nine years from February 6, 1913, to remove sand and gravel from this property was $122,303.24. In the absence of any evidence in the record before us tending to prove erroneous that determination of value, we must adopt it and assume that, in so stipulating, respondent, by his counsel, considered the elements of uncertainty pointed out which would have a bearing on the value of petitioner's license.

The Revenue Act of 1921 provides that, in computing net income, there shall be allowed as a deduction:

SEC. 214. (a) (8) A reasonable allowance for the exhaustion * * * of property used in the trade or business · * * *. In the case of such property acquired before March 1, 1913, this deduction shall be computed upon the basis of its fair market value as of March 1, 1913.

This section of the Act of 1918 does not contain the provision making the value as of March 1, 1913, the basis for the deduction in the case of property acquired before that date, but that this basis shall be used has been established by the courts and by this Board in decisions so numerous that citation is unnecessary.

Petitioner is entitled to an annual deduction representing the exhaustion of his contract which was used in connection with his trade or business, based on its value as of March 1, 1913, either prorated over its term, or gauged by the rate of removal of the deposits which the contract gave him the right to recover. The parties apparently have agreed that the exhaustion sustained can be measured accurately by removals, and have stipulated the amounts allowable on that basis during the years here involved. These amounts were stipulated as the deductions to be allowed as depletion in the event we decided petitioner was entitled to depletion. We are not allowing depletion of the deposits, but are allowing a deduction on account of exhaustion of the value of the right arising under the contract of lease. However, since we have adopted the stipulated basic value of that right upon which was based the computation of exhaustion sustained as made by the parties, and since neither objects to the suggested basis nor contends for any other, we approve the determination of the allowances upon the removal basis and the amount thereof as stipulated.

*Judgment will be entered under Rule 50.*