**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

─────────────

**No. 23-1532**

─────────────

MOUNTAIN VALLEY PIPELINE, LLC,

Plaintiff – Appellee,

v.

8.37 ACRES OF LAND, OWNED BY FRANK H. TERRY, JR., JOHN COLES TERRY, III, AND ELIZABETH LEE TERRY ALSO KNOWN AS ELIZABETH LEE REYNOLDS ROANOKE COUNTY TAX MAP PARCEL NO. 102.00-01-02.00-0000 AND BEING MVP PARCEL NO. VA-RO-046,

Defendant – Appellant,

and

CHARLES MALCOLM LOLLAR, SR.

Defendant.

─────────────

Appeal from the United States District Court for the Western District of Virginia, at Roanoke.  Elizabeth Kay Dillon, District Judge.  (7:20-cv-00134-EKD)

─────────────

Argued:  March 21, 2024                          Decided:  May 14, 2024

─────────────

Before GREGORY, WYNN, and THACKER, Circuit Judges.

─────────────

Reversed, vacated, and remanded by published opinion.  Judge Thacker wrote the opinion, in which Judge Gregory and Judge Wynn joined.

─────────────

**ARGUED:** Norman A. Thomas, NORMAN A. THOMAS, PLLC, Richmond, Virginia, for Appellant. Wade Wallihan Massie, PENN, STUART & ESKRIDGE, Abingdon, Virginia, for Appellee. **ON BRIEF:** Joseph V. Sherman, JOSEPH V. SHERMAN, P.C., Norfolk, Virginia, for Appellant. Seth M. Land, PENN, STUART & ESKRIDGE, Abingdon, Virginia, for Appellee.

———————

2

THACKER, Circuit Judge:

Mountain Valley Pipeline ("Appellee") is constructing an interstate natural gas pipeline. Through condemnation actions pursuant to the Natural Gas Act, Appellee acquired easements on properties along the pipeline's route. Property owned by Frank Terry, John Coles Terry, and Elizabeth Terry ("Appellants") was one such property, which was encumbered by temporary and permanent easements on 8.37 acres. After the district court granted Appellee immediate possession of the easements, the case proceeded to a jury trial to determine the amount of just compensation owed by Appellee to Appellants for the easements.

At trial, various appraisers testified as to the land's value before and after the easements. Ultimately, the jury rendered a $523,327 verdict. Appellee moved for judgment as a matter of law. It argued that the verdict resulted from the jury improperly mixing expert testimony. After this appeal was docketed, the district court agreed with Appellee and granted judgment as a matter of law. The court vacated the $523,327 jury verdict, entered a judgment for $261,033, and conditionally granted a new trial with the option of remittitur.

Because the jury's $523,327 verdict can be supported by credited testimony without mixing different land use valuations, as the district court assumed, we reverse the district court's judgment as a matter of law and remand with instructions to reinstate the $523,327 verdict. We also reverse the grant of a new trial.

Additionally, Appellants moved for attorney's fees and costs pursuant to federal law. On that motion, the district court held that federal law did not entitle Appellants to

3

attorney's fees. Appellants filed a second motion for attorney's fees, which asserted that Virginia law applied. The district court denied the second motion, holding that federal law, as opposed to state law, applied. However, because the district court lacked jurisdiction at the point that it ruled on the second motion, we vacate and remand.

I.

A.

Appellee is constructing a natural gas pipeline from West Virginia to Virginia. To construct the pipeline, Appellee condemned temporary and permanent easements on property along the pipeline's route. It needed temporary easements to access property during the pipeline's construction and permanent easements for the pipeline itself. Appellee acquired these easements through condemnation acts pursuant to the Natural Gas Act. Some of those easements were on Appellants' property.

Appellants' property comprises 560 acres in Roanoke County, Virginia. The land is accessed by a private driveway and improved with a two-story farmhouse, a rental dwelling, a garage, and storage sheds. The district court granted Appellee immediate possession of the easements on Appellants' property. Because the parties could not agree on a just compensation amount for the easements, the case proceeded to a jury trial.

Before trial, both sides engaged appraisers to value Appellants' property before and after the easements in order to measure the just compensation amount that Appellee would owe Appellants. The appraisers were each deemed expert witnesses by the district court.

4

1.

In condemnation cases, appraisers typically begin by determining the highest and best use of the subject property. The highest and best use of the property is the most profitable use for the land and can include commercial uses even if the land is currently used for residential purposes. Then, utilizing the highest and best use of the land, appraisers value the land before and after the taking. The difference between the before value and the after value is the amount of just compensation due for the taking.

One of Appellants' experts, Dennis Gruelle, opined in a report before trial that the highest and best use of Appellants' land was as a wind farm. Initially, Gruelle concluded that a wind farm would be incompatible with the pipeline project. But Appellee's appraiser concluded that a wind farm was in fact compatible with the pipeline project. Gruelle then filed a supplemental report and changed his opinion on the land's highest and best use. Instead of solely a wind farm, Gruelle concluded that the property had two separate highest and best uses, including as a family subdivision and a wind farm. That said, Gruelle also admitted that the wind farm was compatible with the pipeline easements.

Appellee moved to exclude Gruelle's second report, arguing that it was untimely and not supplemental. The district court granted the motion and excluded Gruelle's second report because it contained "several opinions that [were] entirely new and

5

different from his first report." J.A. 337.[1]   Thus, the district court determined that Gruelle's second report was not supplemental.

2.

Four appraisers testified at trial, three of which are relevant here. Gruelle and Jared Schweitzer testified on behalf of Appellants. Joseph Thompson testified on behalf of Appellee.

a.

*Gruelle's Testimony*

Appellants presented Gruelle as an expert in eminent domain appraising methodology. Gruelle explained the three approaches to appraising eminent domain takings: (1) the sales comparison approach, which uses similar sales to value the subject property; (2) the income approach, which looks at the property's potential to generate income; and (3) the cost approach, used with unique properties, which accounts for special features on the property. Gruelle's report utilized the sales comparison approach -- comparing Appellants' property to four similar sales. One comparative sale had an adjusted value of $2,594 per acre, and the other three ranged from $2,993–4,604 per acre. Gruelle concluded that the maximally productive use of the land was as a wind farm. On cross-examination, Gruelle admitted that the pipeline project would not impact the land's use as a wind farm. And when used as a wind farm, Gruelle concluded that the before

---

[1] Citations to the "J.A." refer to the Joint Appendix filed by the parties in this appeal.

taking value of the land was $2,900 per acre, which was informed by his comparative sales. Thus, Gruelle valued Appellants' 560 acres at $1,624,000 (560 x $2,900).

Gruelle also valued the improvements on the land. After depreciation, he concluded that the improvements were worth $281,400. Adding the value of the improvements to his valuation of the land and rounding down, Gruelle concluded that the total before value of the land with improvements was $1.9 million.

Appellee moved to exclude Gruelle's testimony on the land's value after the easements. Appellee argued that Gruelle's conclusions in his first report regarding the land's value after the easements was invalid. The district court granted the motion, and it prevented Gruelle from testifying to the value of the land after the easements. Thus, the only testimony from Gruelle that the court permitted was regarding the land's before value of $1.9 million.

b.

*Schweitzer's Testimony*

Appellants admitted Schweitzer as an expert in real estate appraisal. Schweitzer testified that the highest and best use for Appellants' land was residential. Schweitzer explained that the property was damaged by the pipeline because the easements reduced Appellants' property interest in the land. Schweitzer concluded that Appellants' property was worth 30% less after the permanent easements. This 30% figure is also referred to as a damage percentage, since it measures the percentage difference between the land before and after the taking. On cross-examination, Schweitzer testified that, in his estimation, Appellants' land, before the taking, was worth $850,000. This $850,000 valuation was

7

based on the land's deed acreage -- 400 acres -- rather than the county's geographical information system map, which estimates the land as 560 acres. According to Schweitzer, applying his 30% damage percentage, the after easements value of the property was $590,932, resulting in $259,068 in just compensation for the permanent easements ($590,932 x 30%). As to the temporary easements, which Schweitzer valued by measuring the rental value of accessing the land during the pipeline's construction, he concluded that rental value was $1,965. This resulted in a total just compensation value of $261,033 ($259,068 + $1,965).

c.

*Thompson's Testimony*

Appellee offered Thompson as an expert in real estate appraisal. Like Schweitzer, Thompson opined that the highest and best use for the land was residential. He valued the land at $1.2 million before the permanent easements and $1.05 million after, resulting in a damage percentage of 12%. Thus, Thompson's just compensation figure for the permanent easements was $150,000 ($1,200,000 – $1,050,000). As to the temporary easements, Thompson testified that the annual rental value was $623.40, which totaled $3,117 for five years of temporary use ($623.40 x 5). Thompson's total just compensation was $153,117 ($150,000 + $3,117).

d.

In sum, the experts at trial gave the following estimates of the land's value before and after the taking, resultant diminution in value, and estimated just compensation:

8

| Expert | Before Value | After Value | Diminution | Temporary Easement Rental Value | Total Just Compensation |
|--------|-------------|-------------|------------|--------------------------------|-------------------------|
| Gruelle | $1.9 million | Excluded | Excluded | Excluded | Excluded |
| Schweitzer | $850,000 | $590,932 | $259,068 | $1,965 | $261,033 ($259,068 + $1,965) |
| Thompson | $1.2 million | $1.05 million | $150,000 | $3,117 | $153,117 ($150,000 + $3,117) |

In addition to the expert testimony, the district court permitted the jury to visit the site.

3.

At the close of Appellants' case, Appellee moved for judgment as a matter of law. Appellee argued that the maximum amount the jury could award was Schweitzer's $261,033 just compensation award. Appellee argued that in order to reach a higher verdict, the jury would have to give credence to Gruelle's wind farm valuation mixed with Schweitzer's residential diminution value. And Appellee argued this calculation would be erroneous because the jury would need to mix Gruelle's and Schweitzer's figures inasmuchas they used different highest and best uses, and that mix would be legally impermissible. Specifically, Gruelle's figure was based on the land's use as a wind farm, a commercial use, but Schweitzer's figure was based on a residential use. Appellants opposed the motion, arguing that the jury was not required to adopt the opinion of any single expert witness in order to arrive at its verdict. The district court denied judgment as a matter of law because it determined that there were still issues of fact for the jury to consider.

9

Thereafter, during closing argument, Appellants asked the jury to deliver a $570,000 verdict, calculated by taking Gruelle's $1.9 million before taking value and reducing it by Schweitzer's 30% diminution. Appellee countered that doing so would be improper, as Gruelle's $1.9 million value was based on valuing the property as a wind farm, whereas Schweitzer's diminution was based on a residential use.

The jury awarded a verdict of $523,327.

## 4.

### a.

### *Judgment as a Matter of Law*

Twenty-six days after the jury's verdict, Appellee moved the district court to enter judgment as a matter of law in the amount of $261,033, or to grant a new trial. Appellee argued that the jury's $523,327 verdict was against the clear weight of the evidence and should be set aside because the only way the jury could have reached that verdict was by improperly mixing expert testimony. Appellants opposed the motion, asserting that the jury verdict was within the range of credited testimony.

The district court granted Appellee's motion for judgment as a matter of law. The district court held that the jury's $523,327 verdict was not within the range of credited testimony. It reasoned that to reach that amount, the jury must have combined Gruelle's valuation of the property prior to the taking with another expert's diminution percentage. And because Gruelle valued the land as a wind farm, applying any other expert's diminution percentage, which were each based on a residential use, was improper.

10

Looking to state cases from Colorado, Wyoming, and Wisconsin,[2] the court held that a "jury cannot take a pre-take commercial or industrial highest and best use fair market value," such as a wind farm, and "then use a residential diminution in value and residential post-take fair market value to determine just compensation under the circumstances of this case." J.A. 1266. Thus, the district court granted judgment as a matter of law, vacated the $523,327 jury verdict, and entered judgment for $261,033.

To reach that amount, the district court took Schweitzer's $850,000 before taking value and subtracted his $590,932 after taking value, resulting in $259,068 for the permanent easements. The court then added Schweitzer's temporary easement value, $1,965, in order to reach $261,033. The district court also granted Appellee's motion for a new trial with the option of $261,033 remittitur.

*b.*

*Attorney's Fees & Costs*

Thirteen days after the jury's verdict, Appellants moved for attorney's fees and costs. Appellants argued that federal law, specifically the Equal Access to Justice Act ("Act"), 28 U.S.C. § 2412, applied to determine attorney's fees and costs. The Act provides fees to claimants who are prevailing parties in civil actions brought by or against the United States. 28 U.S.C. § 2412(d)(1)(A). Appellee opposed the motion, arguing that Appellants were not entitled to fees and costs because Appellee was not the United

---

[2] *Jagow v. E-470 Pub. Highway Auth.*, 49 P.3d 1151 (Colo. 2002); *Energy Transp. Sys., Inc. v. Mackey*, 674 P.2d 744 (Wyo. 1984); *Genge v. City of Baraboo*, 241 N.W.2d 183 (Wis. 1976).

11

States or a government agency and, therefore, the Act did not apply. After the district court held a hearing on the motion, Appellants filed a notice of supplemental authorities. With these supplemental authorities, Appellants argued, for the first time, that they were entitled to costs and fees pursuant to Virginia state law, rather than federal law. Specifically, Appellants argued that because state substantive law governed the measure of just compensation under the Natural Gas Act, Virginia law entitled them to attorney's fees and costs. Appellee moved to strike Appellants' supplemental authorities because it was not supplemental, but, rather, raised new authorities for a different claim that Appellants failed to raise in their initial motion for attorney's fees.

Almost a year after the jury verdict, the district court struck Appellants' supplemental authorities and denied their first amotion for attorney's fees based on federal law. That same day, Appellants filed a second motion for fees and costs, arguing that Virginia law applied. The parties fully briefed that motion, and it was submitted to the district court. And on March 29, 2024, *while this appeal was pending*,[3] the district court purported to rule on the second motion for attorney's fees. The district court held that federal law, not state law, governs the amount of just compensation, including attorney's fees and costs, for condemnations pursuant to the Natural Gas Act. Thus, the district court denied Appellants' motion and concluded that Appellants were not entitled to attorney's fees pursuant to federal law.

Appellants timely appealed.

---

[3] Oral argument on this appeal was on March 21, 2024.

12

II.

"We review de novo the district court's grant of a post-trial motion for judgment as a matter of law under Federal Rule of Civil Procedure 50(b)." *Humbert v. Mayor & City Council of Baltimore City*, 866 F.3d 546, 554 (4th Cir. 2017). In conducting this review, we view "the evidence in the light most favorable to the prevailing party." *Hicks v. Ferreyra*, 64 F.4th 156, 164 (4th Cir. 2023) (quoting *FDIC v. Bakkebo*, 506 F.3d 286, 294 (4th Cir. 2007)).

The decision to grant or deny a motion for a new trial is within the sound discretion of the district court and will not be disturbed absent an abuse of discretion. *Hicks*, 64 F.4th at 174. "When considering a motion for a new trial under Rule 59, 'a trial judge may weigh the evidence and consider the credibility of the witnesses.'" *Id.* at 175 (quoting *Poynter ex rel. Poynter v. Ratcliff*, 874 F.2d 219, 223 (4th Cir. 1989)). A court "abuses its discretion when it acts arbitrarily or irrationally, fails to consider judicially recognized factors constraining its exercise of discretion, relies on erroneous factual or legal premises, or commits an error of law." *United States v. Dillard*, 891 F.3d 151, 158 (4th Cir. 2018).

13

III.

A.

A jury's just compensation award must be "within the range of credited testimony."[4] *United States v. Smoot Sand & Gravel Co.*, 248 F.2d 822, 829 (4th Cir. 1957). For an award to be within the range of credited testimony, it must be based on the evidence presented at trial, including expert testimony. *E. Tenn. Nat. Gas Co. v. 7.74 Acres, Va.*, 228 F. App'x 323, 330 (4th Cir. 2007). Appellants argue that the jury's $523,327 award meets that standard and that, therefore, the district court erred in concluding the award went beyond credited testimony. Appellee contends that the jury's award reflects that it improperly mixed testimony from Gruelle, who valued the land as a wind farm, with testimony from either Schweitzer or Thompson, who each valued the land as residential use. Thus, according to Appellee, the award was outside the range of credited testimony and against the clear weight of the evidence.

But the jury may accept or reject any part of an expert's testimony and remain within the range of credited testimony even if it does not adopt any one expert's

---

[4] We acknowledge the open question of whether state law or federal law governs the substantive determination of just compensation in condemnation actions brought by private entities under the Natural Gas Act. *See Tenn. Gas Pipeline Co., LLC v. Permanent Easement for 7.053 Acres*, 931 F.3d 237 (3d Cir. 2019); *Sabal Trail Transmission, LLC v. 18.27 Acres of Land*, 59 F.4th 1158 (11th Cir. 2023); *Columbia Gas Transmission Corp. v. Exclusive Nat. Gas Storage Easement*, 962 F.2d 1192 (6th Cir. 1992); *see also Bison Pipeline, LLC v. 102.84 Acres of Land*, 560 F. App'x 690 (10th Cir. 2013). But we decline to decide that question at this juncture. Because Virginia state law would uphold a verdict supported by sufficient evidence, *State Highway Comm'r v. Frazier*, 203 S.E.2d 350, 351–52 (Va. 1974), we see no conflict between state and federal law here.

14

testimony wholesale. *Smoot*, 248 F.2d at 829. Moreover, when a jury views a property itself, as it did here, it has "a wide latitude" to apply its own judgment of the property's value. *Id.* And, significantly, although Appellee argues that the jury here could not have come up with the award that it did without improperly mixing commercial and residential valuations, Appellants explain that the verdict can, in fact, be calculated without doing so.

At oral argument, Appellants suggested that the jury's verdict is supported by the following calculation. Instead of crediting any single expert's before taking valuation of the land, the jury looked to the comparison sales that Gruelle identified -- which were residential land sales near Appellants' property. The jury then credited Gruelle's first comparison sale, at $2,594 per acre. Using that comparison sale multiplied by the 560 acres of Appellants' property, the jury would have concluded that the land was worth $1,452,640. Then, the jury could have added Gruelle's $281,400 improvement value to arrive at a before taking value of $1,724,040. This before taking value is rooted in testimony in the record that values the land for residential use because Gruelle's comparison sales and his improvements both were based on a residential use. Then, the jury could have credited Schweitzer's 30% diminution for the permanent easements -- a percentage based upon loss of residential value. Taking the property's before taking value of $1,724,040 and multiplying it by 30% equals $520,212. And finally, Appellants argue the jury could have credited Thompson's temporary easement value of $3,117. Adding the above calculated just compensation for the permanent easements ($520,212)

15

and the temporary easements ($3,117) equals $523,329 -- a mere two dollars above the jury's verdict. Expressed as several calculations:

| | |
|---:|:---|
| $2,594 | Gruelle's First Study's Per Acre Value |
| x 560 | Total Acres of Land |
| = $1,452,640 | Total Land Value |
| + $281,400 | Gruelle's Improvement Value |
| = $1,734,040 | Value of the Land with Improvements |
| x 0.30 | Schweitzer's Diminution Percent |
| = $520,212 | Just Compensation (Permanent Easements) |
| + $3,117 | Thompson's Temporary Easement Value |
| = *$523,329* | *Total Just Compensation Owed* |
| | *(Compared to the Jury Verdict of $523,327)* |

We agree with Appellants that the jury clearly could have reached its verdict using residential values alone without the need to venture beyond the credited testimony. And in doing so, the jury could accept or reject any part of each expert's testimony -- its verdict did not have to conform to the just compensation of any one witness. Because the jury's verdict can be supported using residential values alone, it is unnecessary for us to decide whether it is improper for a jury to mix commercial and residential valuations in just compensation cases. Thus, we hold that the $523,327 verdict is within the range of credited testimony, and remand with instructions to reinstate the verdict.

### B.

Upon determining that the jury improperly mixed expert testimony as to different land uses and valuations, the district court conditionally granted a new trial, relying on the same reasoning that it granted judgment as a matter of law. Appellants argue that this was an abuse of discretion. Because the district court relied on an erroneous factual premise -- that the jury's award resulted from improperly mixing expert testimony -- we

16

hold that it abused its discretion in granting a new trial. *See James v. Jacobson*, 6 F.3d 233, 239 (4th Cir. 1993) ("[D]iscretion may be abused by an exercise that is flawed by erroneous factual or legal premises."). Therefore, we reverse the district court's grant of a new trial.

C.

1.

Appellants argue that they are entitled to attorney's fees and costs pursuant to Virginia law. But Appellants did not properly raise this argument before the district court. In their first motion for attorney's fees, Appellants solely argued that federal law, the Equal Access to Justice Act, 28 U.S.C. § 2412, applied. Appellants did not raise Virginia law until they filed their supplemental authorities, which was *after* the district court held a hearing on the first motion for attorney's fees. The district court struck those supplemental authorities because Appellants advanced new arguments that could have been presented previously. Thus, the district court denied Appellants attorney's fees motion on the sole ground Appellants raised in their first motion -- federal law. Looking to federal law, the district court concluded that the Act did not entitle Appellants to attorney's fees because Appellee is not the United States.

Absent exceptional circumstances, parties may not raise new arguments on appeal that were not first presented to the district court. *Richardson v. Clarke*, 52 F.4th 614, 625 (4th Cir. 2022). Appellants have not shown exceptional circumstances here. Thus, Appellants waived their Virginia law argument before us by not properly raising it below. And on appeal, Appellants do not argue that federal law entitles them to attorney's fees.

17

2.

On the same day the district court struck Appellants' supplemental authorities and held that federal law did not entitle them to attorney's fees, Appellants filed a second motion for attorney's fees. The district court purported to rule on the second motion on March 29, 2024, while this appeal was pending -- indeed, the district court ruled on the second motion eight days *after* oral argument in this appeal. The district court held that federal law, not state law, governs the amount of just compensation for condemnations pursuant to the Natural Gas Act, including attorney's fees and costs. Therefore, the district court denied Appellants' second motion for attorney's fees.

But the filing of a timely and sufficient notice of appeal immediately transfers jurisdiction of "all matters relating to the appeal from the district court to the court of appeals." *Grand Jury Proc. Under Seal v. United States*, 947 F.2d 1188, 1190 (4th Cir. 1991). Put differently, a notice of appeal divests the district court of "its control over those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982). Nonetheless, we have held that a district court retains jurisdiction to decide an attorney's fees motion *if* the issue of attorney's fees is separate from the merits of the appeal. *Langham-Hill Petroleum, Inc. v. S. Fuels Co.*, 813 F.2d 1327, 1331 (4th Cir. 1987). Here, the district court's opinion dealt squarely with an "aspect of the case" on appeal -- whether Appellants are entitled to attorney's fees. Thus, the district court lacked jurisdiction to modify its attorney's fees decision or decide the same issue through a second motion for attorney's fees.

18

As a result, we vacate and remand the district court's March 29, 2024 order as to the second motion for attorney's fees.  We express no opinion on whether the second motion is permitted or timely, nor whether Virginia law or federal law applies.  We leave these issues for the district court to consider in the first instance.

IV.

We reverse the district court's order of judgment as a matter of law to Appellee. As a result, we also reverse the district court's grant of a new trial with the option of remittitur.  We remand for the district court to reinstate the jury's $523,327 verdict.  We vacate the district court's order denying Appellants' second motion for attorney's fees and remand for the district court to consider Appellants' second motion for attorney's fees and costs.

*REVERSED, VACATED, AND REMANDED*