**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 06-1716**

EAST TENNESSEE NATURAL GAS COMPANY,

Plaintiff - Appellant,

versus

7.74 ACRES IN WYTHE COUNTY, VIRGINIA; HAROLD
HART; LARRY S. BALL,

Defendants - Appellees,

and

MARY CASEL, Commissioner of Revenue; JOHN
DOE; UNKNOWN OWNERS,

Defendants.

Appeal from the United States District Court for the Western
District of Virginia, at Danville.  Jackson L. Kiser, Senior
District Judge. (4:02-cv-00104-jlk)

Argued: March 15, 2007              Decided: May 22, 2007

Before TRAXLER, KING, and GREGORY, Circuit Judges.

Affirmed by unpublished opinion.  Judge Gregory wrote the opinion,
in which Judge Traxler and Judge King joined.

Lela Merrell Hollabaugh, WALLER, LANSDEN, DORTCH & DAVIS,
Nashville, Tennessee, for Appellant.  Henry Evans Howell, III,
WALDO & LYLE, Norfolk, Virginia, for Appellees.

———————

Unpublished opinions are not binding precedent in this circuit.

GREGORY, Circuit Judge:

A jury in Roanoke, Virginia, awarded approximately $1.8 million to Appellees Harold Hart and Larry S. Ball ("Appellees") as just compensation for the easements taken by Appellant East Tennessee Natural Gas Company ("East Tennessee"). The district court denied East Tennessee's motion for a new trial or, in the alternative, remittitur, a decision East Tennessee now appeals. Finding no abuse of discretion by the district court, we affirm.

I.

In 2003, the court below granted East Tennessee a fifty-foot wide permanent easement across 7.74 acres of Appellees' land and a temporary easement across 10.31 acres of Appellees' land so that East Tennessee could install a natural gas pipeline. That decision, which this Court affirmed, is not before us. See East Tenn. Natural Gas Co. v. Sage, 361 F.3d 808 (4th Cir. 2004); see also id. at 818 (explaining that the Natural Gas Act, 15 U.S.C. § 717f(h) (2000), grants gas companies the power to acquire property by eminent domain). The taking has affected approximately 378 acres of Appellees' 700-acre real estate. Those 378 acres ("Appellees' property") are comprised of a 364-acre parcel and a 14-acre parcel beside State Route 629 and at the intersection of Interstate Routes 77 and 81 in Wythe County, Virginia.

In March 2006, the district court impaneled a six-person jury to determine the amount of just compensation owed to Appellees as a result of the taking. Before trial began, East Tennessee filed motions in limine to exclude the appraisal testimony of Appellees' two expert witnesses, Frank Porter and Dennis Gruelle. The motions argued that Porter and Gruelle's testimony about the value of Appellees' property before and after the taking was not based upon sufficient facts and was not the product of reliable methods as required by Federal Rule of Evidence 702. After a hearing on the motions, the court denied them.

On the first day of trial, the jury visited Appellees' property. When the jury returned, Appellees called Robert Cellell Dalton, Wythe County Administrator and a civil engineer by trade. Dalton indicated that commercial development was the highest and best use for Appellees' property before the taking. In 2002, he recalled, a large sporting goods retailer approached Appellees about commercial use of their property because of its high visibility from two interstates. The county's marketing efforts resulted in the retailer's narrowing its choice for a location on which to build to Appellees' property and a site in West Virginia that the retailer ultimately chose for tax reasons. Dalton admitted that the negotiations did not progress beyond a general stage, that there would be costs (albeit costs the county was willing to undertake) associated with developing Appellees'

property for commercial use, and that no one was looking at the property when the pipeline was announced. Dalton further testified that if the pipeline had not been built, the county would have continued to show the property to commercial and industrial buyers interested in interstate visibility. Now the county does not.

Appellees next called John Fowler, an engineering consultant who testified that before the taking, it would have been practically and economically feasible to build interstate on/off ramps on Appellees' property, thereby increasing its suitability for commercial and industrial development. Now, he testified, Appellees' property is unsuitable for such development because an access road cannot be built over the pipeline. Fowler relied on his visit to the site, maps supplied by East Tennessee and the U.S. Geological Survey, and a video shown at trial to reach his conclusions.

Appellees called appraisers Porter and Gruelle to establish a fair market value for the property before and after the taking. Porter testified that the highest and best use of Appellees' property before the taking was "to hold it for an industrial/ commercial type of use." J.A. 560. Porter relied on three industrial sales in the Virginia counties of Rockingham, Warren, and Wythe to determine the before-take value of Appellees' property. He reduced the values of those three properties by 52%, 66%, and 75%, respectively, to make them comparable to Appellees'

property, a "unique property" for appraisal purposes. J.A. 560-61. In assessing the value of Appellees' property, Porter assumed that interstate ramps which currently do not exist would be constructed. Porter concluded that the placement of the pipeline in the middle of Appellees' property now limited the property to agricultural or residential use. Accordingly, he relied on agricultural and residential sales from Wythe County to calculate the value of Appellees' property after the taking.

Like Porter, Gruelle testified that the highest and best use of Appellees' property before the taking was commercial development and that the property's location made it unique for appraisal purposes. Gruelle used five sales of property for commercial or industrial use to establish the before-take value of Appellees' property. The first sale was the same Rockingham County sale used by Porter. The second, third, and fourth sales involved property between 16.69 and 20 acres in size, a contrast to Appellees' 378 acres. The fifth sale was the same Wythe County sale used by Porter. In addition, two of the five sales Gruelle used were sales of property for the construction of convenience stores or truck stops; Gruelle admitted that Appellees' property is not suited to such use. Gruelle reduced the values of the five properties by 55%, 85%, 55%, 35%, and 60%, respectively, in order to establish a value for Appellees' property before the taking. Gruelle concluded that the property's diminished utility after the installation of

the pipeline made its highest and best use residential and agricultural use. Like Porter, Gruelle used three sales of agricultural and residential property in Wythe County to calculate the value of Appellees' property after the taking.

East Tennessee called appraiser Warren Klutz, who gave extensive testimony about the improper application of professional appraising standards by Porter and Gruelle. Klutz testified that Porter and Gruelle did not provide sufficient data or evidence to support their conclusions that the highest and best use of Appellees' property before the taking was commercial or industrial development. Klutz opined that the highest and best use before the taking was agricultural or residential use. Klutz did not appraise Appellees' property, visit the property, review the files prepared by Porter and Gruelle (as opposed to reading only their reports), or talk to any of the parties involved in the transactions on which Porter and Gruelle relied.

East Tennessee also presented the videotaped deposition of John Harris to establish that Appellees' property outside of the easement could still be developed. Lastly, East Tennessee called appraiser James Johnston. Johnston testified that because of poor access to the property and because of its topography, the property's highest and best use was agricultural or residential use. Johnston admitted that the property's proximity to the interstate was an advantage and that he had not consulted an

engineer in forming his conclusion that it would be too expensive to develop access to Appellees' property.  Johnston further testified that based on market practices, he accounted only for the loss in value to the 200 feet on each side of the pipeline, not the loss in value to Appellees' entire property.

The jury returned a verdict in favor of Appellees in the amount of $1,875,986.  East Tennessee then filed a motion for a new trial or, in the alternative, remittitur, pursuant to Rule 59 of the Federal Rules of Civil Procedure.  After a hearing, the district court denied the motion.  In this appeal, East Tennessee charges that the district court abused its discretion in denying its motion for a new trial or, in the alternative, remittitur, and in admitting the expert testimony of Porter and Gruelle.  We consider the latter charge first.

II.

We review a trial court's decision whether to admit expert testimony for abuse of discretion.  O'Neill v. Windshire-Copeland Assocs., 372 F.3d 281, 284 (4th Cir. 2004).  In making its decision, the trial court "exercises a gate keeping function to assess whether the proffered evidence is sufficiently reliable and relevant."  Westberry v. Gislaved Gummi AB, 178 F.3d 257, 261 (4th Cir. 1999).  East Tennessee argues that the court below abdicated

its gate-keeping function when it admitted expert testimony that, for two reasons, was flawed from the start.[1]

First, according to East Tennessee, Porter and Gruelle failed to establish that the highest and best use of Appellees' property before the taking was industrial or commercial use. This Court presumes the highest and best use of a property to be its current use—here, agricultural and residential—unless the landowner shows that a different highest and best use is "reasonably probable" within the "reasonably foreseeable future," not merely "within the realm of possibility." United States v. 69.1 Acres of Land, 942 F.2d 290, 292 (4th Cir. 1991). East Tennessee contends that Porter and Gruelle have not met this standard: the last offer for the property was made in 2002, at a price-per-acre nearly half of that appraised by Porter and Gruelle, and the property would have required extensive improvements in access and topography to accommodate industry and commerce.

---

[1]We reject Appellees' suggestion that East Tennessee's failure to object to the admission of the expert testimony at trial has ruined the issue for appeal. "Motions in limine preserve issues that they raise without any need for renewed objections at trial, just so long as the movant has clearly identified the ruling sought and the trial court has ruled upon it." Rice v. Cmty. Health Ass'n, 203 F.3d 283, 286 (4th Cir. 2000); see also Fed. R. Evid. 103(a) ("Once the court makes a definitive ruling on the record admitting or excluding evidence, either at or before trial, a party need not renew an objection or offer of proof to preserve a claim of error for appeal."). East Tennessee has met this standard.

Second, according to East Tennessee, Porter and Gruelle did not use truly "comparable" sales to determine the value of Appellees' property before the taking, making their opinions untrustworthy and misleading.  East Tennessee alleges that one of Porter's three comparable sales is unreliable because it was not an arms-length transaction and that his other two sales took place in counties that he has not established are similar to Wythe County. East Tennessee finds similar fault with two of Gruelle's comparable sales and complains that the remainder of his comparable sales are of properties too small to be compared to Appellees' 378 acres. Both experts' "drastic" downward adjustments demonstrate, in East Tennessee's view, precisely how dissimilar their chosen comparable sales are to Appellees' property.

Where, as here, an expert's factual basis, data, principles, methods, or application are called into question, Federal Rule of Evidence 702[2] and <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>, 509

---

[2]Federal Rule of Evidence 702 states in its entirety:

> If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.

U.S. 579 (1993), require a trial court to determine whether the expert's testimony "has a reliable basis in the knowledge and experience of [his or her] discipline." <u>Kumho Tire Co., Ltd. v. Carmichael</u>, 526 U.S. 137, 149 (1999) (quotation marks omitted). In making this determination, the court must focus on the "principles and methodology employed by the expert, not on the conclusions reached." <u>Westberry</u>, 178 F.3d at 261 (quotation marks omitted). The court "should be mindful that Rule 702 was intended to liberalize the introduction of relevant expert evidence." <u>Id.</u> Accordingly, we have held that:

> the court need not determine that the expert testimony a litigant seeks to offer into evidence is irrefutable or certainly correct. As with all other admissible evidence, expert testimony is subject to being tested by [v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof.

<u>Id.</u> (quotation marks and citations omitted). At the same time, the court should be mindful that, "given the potential persuasiveness of expert testimony, proffered evidence that has a greater potential to mislead than to enlighten should be excluded." <u>Id.</u> We give "great deference" to the trial court's ultimate decision. <u>United States v. Barnette</u>, 211 F.3d 803, 816 (4th Cir. 2000). It will not be disturbed unless the court acted arbitrarily or irrationally. <u>United States v. Jones</u>, 913 F.2d 174, 177 (4th Cir. 1990).

In denying East Tennessee's motions in limine, the district judge remarked that he would need to hear the full expert testimony

before deciding whether the experts used incorrect methodology to determine the highest and best use of Appellees' property.  The judge also observed that, because he was not the trier of fact, he "would be on a very slippery slope to start saying what is a proper comparable and what is not a proper comparable."  J.A. 298.  He concluded: "I am not prepared to say that because the comparables are open to very severe cross-examination, that they're not proper comparables.  At this point in time, I think that is an issue for the jury to determine, not the Court."  Id.

This ruling was not an abuse of discretion.  The district judge was not obligated to determine whether Porter and Gruelle's conclusions about highest and best use were "irrefutable" or whether the comparable sales Porter and Gruelle chose were "certainly correct" measurements.  Westberry, 178 F.3d at 261. Porter and Gruelle's choices and conclusions were thoroughly tested on cross-examination, East Tennessee presented its own witnesses to contradict Porter and Gruelle's testimony, and the judge instructed the jury on the burden of proof and the weight to be given expert testimony.  Cf. id.  In these circumstances, we do not find present the competing consideration in admitting expert testimony: the potential for the testimony to mislead rather than to enlighten.

We further note that, in their written motions and at the hearing on the motions, East Tennessee produced no evidence that would have weighed in favor of excluding Porter and Gruelle's

testimony as unreliable. East Tennessee presented no evidence that Porter and Gruelle's starting point for a before value or their rationale in determining highest and best use has not been tested, has not been subject to peer review, has not been accepted by the appraisal community, or has a known rate of error. See generally id. at 261 n.1 (listing "tools" that are valuable in assessing the reliability of an expert's opinion); accord TFWS, Inc. v. Schaefer, 325 F.3d 234, 240 (4th Cir. 2003) (upholding the decision to admit testimony where the plaintiff "[did] not argue that [the expert's] methods have not been tested, have not withstood peer review and publication, have excessive rates of error, have no standards for their application, or have not been accepted in their field").

East Tennessee admits that it has never questioned Porter's and Gruelle's qualifications or their method of determining just compensation by calculating the difference between before and after values. Rather, East Tennessee maintains, it is merely questioning the basis for Porter's and Gruelle's just compensation calculations. Upon closer examination, however, it is apparent that East Tennessee is really challenging the proper weight to be given the evidence presented at trial. Excerpts from East Tennessee's briefs are telling:

> Contrary to the speculative opinions of Mr. Porter and Mr. Gruelle, the clear weight of the evidence at trial established that the highest and best use of the property was for agricultural or residential use.

Appellant's Br. 29; and

-13-

> As stated in East Tennessee's opening brief, the evidence presented at trial arguably suggests that commercial/industrial use may occur at some point in the future. However, the evidence failed to establish that it was reasonably probable in the reasonably near future.

Appellant's Reply Br. 1. In other words, East Tennessee "does not mount a true Daubert challenge." TFWS, 325 F.3d at 240; see id. (upholding decision to admit testimony where the plaintiff mounted "a challenge to the proper weight to be given to [the expert's] evidence, not to its admissibility"). Accordingly, the district court did not abuse its discretion in admitting Porter and Gruelle's testimony.

### III.

We review the decision to deny a motion for a new trial for abuse of discretion and "will not reverse absent exceptional circumstances." Dennis v. Columbia Colleton Med. Ctr., Inc., 290 F.3d 639, 650 (4th Cir. 2002).[3] A court should grant a new trial only if the verdict (1) "is against the clear weight of the evidence, or (2) is based on evidence which is false, or (3) will

---

[3]We reject Appellees' contention that our standard of review is actually even more forgiving because East Tennessee failed to move for a directed verdict at trial pursuant to Federal Rule of Civil Procedure 50(a). East Tennessee was not required to make a Rule 50(a) motion because East Tennessee does not challenge whether there is an issue for the jury—that is, whether Appellees have the right to just compensation. East Tennessee concedes the right to just compensation; instead, it challenges the sufficiency of the evidence supporting the amount of compensation determined by the jury. Thus, this Court's standard of review is unchanged.

-14-

result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict." Knussman v. Maryland, 272 F.3d 625, 639 (4th Cir. 2001).East Tennessee draws our attention to the first and third prongs of this standard.

East Tennessee first argues that the jury verdict is against the weight of the evidence because every appraiser who testified at trial stated that there were agricultural or residential properties in Wythe County that sold for approximately $1,800 per acre. Yet, East Tennessee argues, Porter and Gruelle suggested a before-take value for Appellees' property of $10,000 and $11,500 per acre, respectively, based on incomparable sales of industrial and commercial property in other counties. Second, East Tennessee argues that the verdict will result in a miscarriage of justice because in the six trials and multiple land commission proceedings convened to date to determine the compensation owed to landowners affected by East Tennessee's pipeline, no landowner——regardless of the size of his or her property——has been awarded more than $135,800. Given this, East Tennessee argues, fairness requires setting aside or reducing Appellees' award.

These arguments fail. As the district court noted in its order denying the motion, there was evidence at trial, contrary to East Tennessee's assertions, demonstrating that the highest and best use of Appellees' property before the taking was industrial

and commercial use.  In addition to Porter and Gruelle, Dalton and Fowler testified as much.  Although East Tennessee called witnesses to contradict the conclusions drawn by these four individuals, it was, as the district court noted, the jury's decision to weigh the credibility of the witnesses presented by both sides.  Cf. United States v. Smoot Sand & Gravel Corp., 248 F.2d 822, 829 (4th Cir. 1957) (upholding a verdict "not consistent with either party's theory of valuation" where, among other things, the "jury heard the experts presented by the parties and could accept or reject any part of their testimony").  As for East Tennessee's fairness argument, we find nothing irrational or arbitrary about the district court's conclusion that fairness must be put into context when each just compensation case involves different parcels of land, different owners, different witnesses, and so on.  The mere fact that the jury's verdict in this case exceeds any previous verdict does not mean that there has been a miscarriage of justice.  Furthermore, even if the previous awards represent a fraction of the award here, East Tennessee has provided no evidence about the characteristics of the other properties affected by the pipeline or the testimony, expert and otherwise, that the other juries and land commissioners heard.  East Tennessee's motion was properly denied.

IV.

Whether the jury's award is excessive is a question of law that we review de novo.  Conner v. Schrader-Bridgeport Intern., Inc., 227 F.3d 179, 202 (4th Cir. 2000).  Appellees' appraiser-witnesses, Porter and Gruelle, estimated that just compensation for Appellees' 364-, 14-, and 40-acre parcels[4] would exceed $3 million.  Of East Tennessee's appraiser-witnesses, Klutz could not offer a figure because he did not appraise the property; Johnston testified that Appellees were owed a total of $82,652 for the three parcels.  Given this testimony, which the jury was free to accept or reject as it pleased, an award of $1.8 million is entirely reasonable and is not excessive compensation for the diminution in Appellees' property which the jury could reasonably determine, based on the evidence presented at trial, the pipeline caused.  Cf. Conner, 227 F.3d at 202; see also Klein v. Sears Roebuck & Co., 773 F.2d 1421, 1428 (4th Cir. 1985) (noting that a district court "in its discretion may set aside a verdict and grant a new trial if the verdict is so excessive that it cannot be justified by anything in the record or of which the [c]ourt can take judicial notice" (quotation marks omitted)); Smoot Sand, 248 F.2d at 829 (refusing to grant a new trial where the jury's verdict was within the range of the credited testimony, "which should not be reweighed on

_____

[4]Just compensation for the 40-acre parcel is not at issue in this appeal.

-17-

appeal"). The district court properly denied East Tennessee's request for remittitur.

## V.

For the foregoing reasons, we conclude that the district court did not abuse its discretion in denying East Tennessee's motions in limine and motion for a new trial. We therefore affirm the decision below.

AFFIRMED