**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 23-2129**

---

MOUNTAIN VALLEY PIPELINE, LLC,

　　　　Plaintiff - Appellee,

v.

9.89 ACRES OF LAND, OWNED BY ELIZABETH LEE TERRY, a/k/a Elizabeth Lee
Reynolds, a/k/a Elizabeth Terry Reynolds, Roanoke County Tax Map Parcel No. 110.00-
01-44.00-0000 and Being MVP Parcel No. VA-RO-054,

　　　　Defendant - Appellant.

---

Appeal from the United States District Court for the Western District of Virginia at
Roanoke.  Elizabeth K. Dillon, Chief U.S. District Judge.  (7:19–cv–00145–EKD)

---

Argued:  October 31, 2024　　　　　　　　　　　　Decided:  January 27, 2025

---

Before GREGORY, WYNN, and HARRIS, Circuit Judges.

---

Vacated and remanded by published opinion. Judge Wynn wrote the opinion, in which
Judge Gregory and Judge Harris joined.

---

**ARGUED:**  Joseph Very Sherman, POOLE BROOKE PLUMLEE PC, Virginia Beach,
Virginia, for Appellant.  Wade Wallihan Massie, PENN, STUART & ESKRIDGE,
Abingdon, Virginia, for Appellee. **ON BRIEF:** William B. Newman, POOLE BROOKE
PLUMLEE, PC, Virginia Beach, Virginia, for Appellants.  Seth M. Land, PENN, STUART
& ESKRIDGE, Abingdon, Virginia, for Appellee.

WYNN, Circuit Judge:

In eminent domain proceedings, Federal Rule of Civil Procedure 71.1(h) states that "the court tries all issues" except for the amount of just compensation, which generally must be decided by a jury if "a party demands one."[1] Appellate courts have not provided much guidance on the procedural aspects of Rule 71.1(h). Today we hold that district courts must first determine the admissibility of evidence under the Federal Rules of Evidence and then try issues under Rule 71.1(h) by considering all admissible evidence together. When determining a contested factual issue under Rule 71.1(h), district courts should make findings of fact and conclusions of law, just as they would in a bench trial.

In this case, the district court concluded that Rule 71.1(h) increased its discretion to exclude expert testimony at the preliminary evidentiary stage. Exercising this increased discretion led the court to apply an improperly heightened evidentiary standard to exclude the landowner's first expert report. The court then excluded the landowner's other expert report under Rule 71.1(h) because that report did not make a particular factual showing—which the court may well have found in the first expert's report, had it not excluded it under an improperly heightened evidentiary standard.

---

[1] The Seventh Amendment right to a jury trial does not apply to eminent domain proceedings. *United States v. Reynolds*, 397 U.S. 14, 18–19 (1970). Additionally, "[i]f a party has demanded a jury, the court may instead appoint a three-person commission to determine compensation because of the character, location, or quantity of the property to be condemned or for other just reasons." Fed. R. Civ. P. 71.1(h)(2)(A). Alternatively, if applicable, "compensation must be determined . . . by any tribunal specially constituted by a federal statute to determine compensation." Fed. R. Civ. P. 71.1(h)(1).

The district court's approach amounted to more than a mere labeling error. The landowner intended her two expert reports to complement each other, and excluding one at the evidentiary stage under a heightened evidentiary standard precluded the court from considering all of the admissible evidence holistically at the Rule 71.1(h) stage. It also makes it difficult for us to meaningfully review the court's actions, as the court was not clear about its factual findings and resulting legal conclusions. We vacate and remand for the district court to first apply the normal rules of evidence, and then consider all admissible evidence together under Rule 71.1(h), at which point it should make findings of fact and conclusions of law.

## I.

Elizabeth Reynolds owns 109 acres of farmland in Roanoke County, Virginia (the "Reynolds Parcel"). In October 2017, Mountain Valley Pipeline ("MVP") commenced a condemnation action under the Natural Gas Act, 15 U.S.C. § 717 *et seq.*, for a 9.89-acre pipeline easement on the Reynolds Parcel. The district court granted MVP partial summary judgment and a preliminary injunction granting immediate possession for construction. The only remaining question was the amount of just compensation MVP owed Reynolds.

As relevant here, Reynolds submitted two expert reports on that issue.[2] The first, by developer Sean Horne (the "Horne Report"), opined that the current use of the land as vacant farmland was not its highest and best use—i.e., the use by which the court should

---

[2] Reynolds also submitted the testimony of two additional experts, Linda DeVito and Larry Florin, but she does not appeal their exclusion.

measure its market value. He concluded that, prior to the taking, the parcel was ripe for single-family residential development given its level and cleared topography, its proximity to downtown Roanoke, and the growing local economy. Horne noted that the Reynolds Parcel is zoned AG-3, which requires a minimum of three acres per lot and 200 feet of public road frontage. He stated that "[d]ue to the topography along much of the existing road frontage and the configuration of the property, the development of an internal road network will maximize the development potential of the property." J.A. 188–89.[3] He drew a map of a "conceptual subdivision" of the parcel divided into twenty-two lots, including new roads. J.A. 197.

Horne further concluded that, after the taking, Reynolds would lose development rights along the most developable portions of her property because the pipeline "takes advantage of the gentler slopes as it crosses the subject property which is the same topography desirable and accessible for residential homesites." J.A. 189. He determined that the Reynolds Parcel was now only suitable for use in lower-density residential development.

Reynolds's second expert report, by appraiser Dennis Gruelle (the "Gruelle Report"), calculated the value of just compensation as $327,000. In reaching this figure, Gruelle first considered the Horne Report, his own site visit, and nine nearby recently developed subdivisions and concluded that, prior to the taking, the Reynolds Parcel was suitable for high-end residential development.

---

[3] Citations to the "J.A." refer to the Joint Appendix filed by the parties in this appeal.

4

Comparable sales are generally accepted as the best evidence of property value. *United States v. 269 Acres, More or Less, Located in Beaufort Cnty.*, 995 F.3d 152, 164 (4th Cir. 2021). So, Gruelle's next step was to use the "Sales Comparison Approach" to value the Reynolds Parcel before and after the taking. J.A. 145. Sales comparison involves identifying sales of nearby comparable properties, reducing the data to a common denominator by adjusting for the particular characteristics of the land, and applying the denominator to the subject property. Gruelle identified sales of three nearby properties to determine the pre-taking value of the Reynolds Parcel.

Finally, Gruelle identified the sales of three other nearby properties that were subject to similar easements to determine the value of the Reynolds Parcel after the taking. These sales are discussed below as "Sale One," "Sale Two," and "Sale Three." Based on a comparison of the before-taking and after-taking sales, Gruelle determined that just compensation for the taking in this case was $327,000.

MVP submitted two expert reports of its own, both of which, like Gruelle, used a sales comparison approach. Jared Schweitzer determined a before-taking value of $459,336. Schweitzer arrived at a just compensation figure of $64,251, representing an estimated damage percentage of about 14%. Joseph Thompson determined that the highest and best use for the Reynolds Parcel both before and after the taking was "low-density rural residential use." J.A. 668. He estimated just compensation as $77,407.

In April 2020, MVP moved to exclude Reynolds's expert testimony under an apparent combination of Federal Rule of Civil Procedure 71.1(h) and Federal Rule of Evidence 702. MVP first argued that the Horne Report's opinion on highest and best use

5

did not meet substantive Rule 71.1(h) standards. To claim just compensation on a highest and best use that is different than the current use, the landowner must show that the proposed use was reasonably probable within the reasonably near future. *United States v. 8.929 Acres of Land in Arlington Cnty.*, 36 F.4th 240, 253 (4th Cir. 2022). Many of the lots in Horne's conceptual subdivision are not legally permitted without additional roads because the applicable zoning ordinance requires 200 feet of road frontage per lot. Because Horne did not explain why it was reasonably likely that new roads would be approved by the state, MVP argued that his opinion on highest and best use was "speculative and should be excluded." J.A. 118.

MVP then argued that the Gruelle Report was unreliable under Rule 702 because the after-taking values of two of the sales Gruelle identified—Sale One and Sale Two— "do not provide the value of a property encumbered by a pipeline easement."[4] J.A. 112. Specifically, Sale One involved a property conveyed in December 2017, two months after MVP filed its complaint for that parcel. But, in that case, MVP was not granted possession until March 2018. Thus, Sale One occurred after the eminent domain complaint had been filed, but *before* MVP took possession. Sale Two—which involved a parcel adjacent to Sale One—was conveyed to the same buyer as in Sale One in April 2018, a month after MVP was granted possession of its easement. But MVP provided an affidavit from the

---

[4] The circumstances of the taking in Sale Three are not clear from the record, but MVP does not contest this sale.

6

buyer that he was not aware of the easement at the time of sale. MVP thus contended that Sales One and Two should have been classified as "before sales." J.A. 240.

In September 2021, the district court granted MVP's motion to exclude all of Reynolds's expert testimony. The court recognized that Rule 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), govern the admissibility of expert testimony, but concluded that "[t]he gatekeeping role of the district court is particularly pronounced in condemnation proceedings under Rule 71.1." *Mountain Valley Pipeline, LLC v. 9.89 Acres of Land*, No. 7:19-cv-145, 2021 WL 4398032, at *4 (W.D. Va. Sept. 27, 2021) (quoting *United States v. 33.92356 Acres of Land*, 585 F.3d 1, 8 (1st Cir. 2009)) (brackets in original). The court excluded Gruelle's opinion of the post-taking value of the Reynolds Parcel under Rule 702 because it accepted MVP's argument that "two of the three sales relied upon by Gruelle do not provide the value of a property encumbered by a pipeline easement," and therefore "Gruelle's opinion is based on insufficient data and is unreliable." *Id.* Then, apparently under Rule 71.1, the district court excluded the Horne Report because Horne's conceptual subdivision was "not legally permitted under the applicable zoning ordinance in the absence of a network of public roads that does not exist." *Id.* at *5.

MVP moved for leave to file a motion for summary judgment, which was granted. The court then granted summary judgment to MVP because Reynolds presented no admissible evidence to prove diminution of value resulting from the pipeline. At MVP's

request, the court granted just compensation based on the higher estimate of MVP's two experts—$82,346.[5]

## II.

On appeal, Reynolds argues that the court's award of just compensation was erroneously low because the court improperly excluded her expert witnesses. To evaluate this argument, we must first set forth the procedures that govern an eminent domain proceeding. Accordingly, we begin with the questions of how the Federal Rules of Evidence apply in eminent domain cases and what procedures courts should use to consider the admissible evidence at the Rule 71.1 stage.

## A.

We first consider how the Federal Rules of Evidence apply in eminent domain proceedings. The district court acted under the assumption that Rule 71.1(h)—which instructs the court to try all issues except, in some cases, just compensation—requires it to exercise greater discretion for excluding evidence than would normally be permitted under the Rules of Evidence. That was error. Courts should apply the Federal Rules of Evidence identically in eminent domain cases as in other cases.

As we have previously recognized, the separate stages of eminent domain proceedings should be kept analytically distinct. For example, we recently considered an

---

[5] This number is slightly higher than what Thompson determined in his report, apparently because the court (at MVP's request) used a five-year time horizon for calculating the damages of the temporary easement, rather than three years.

eminent domain case in which the district court decided a disputed non-compensation issue at summary judgment. *8.929 Acres of Land*, 36 F.4th at 257–58. We vacated and remanded, concluding that, "[w]hile the [district] court would not have been procedurally barred from making [a particular finding] on the merits under Rule 71.1, the proceeding was only at the summary judgment stage, meaning Rule 56's standard applied"—and "the district court failed to properly adhere to" that standard. *Id.*

Analogously, here, the district court apparently conflated Rule 71.1(h) with Rule 702. Relying solely on the First Circuit's decision in *United States v. 33.92356 Acres of Land*, the district court concluded that its gatekeeping role in excluding expert testimony under Rule 702 "is particularly pronounced in condemnation proceedings under Rule 71.1." *9.89 Acres of Land*, 2021 WL 4398032, at *4 (quoting *33.92356 Acres of Land*, 585 F.3d at 8). With all due respect to the First Circuit, we disagree.[6] Rule 71.1(h) does not alter the Federal Rules of Evidence in eminent domain proceedings. Rather, the court must first apply those Rules to determine the universe of evidence that it will then use to "tr[y] all issues" under Rule 71.1(h)(1).

"In eminent domain [proceedings], as in other cases, federal courts admit evidence under rules generally applied by federal courts or under the rules of admissibility used by courts of the state in which the trial is held." *United States v. 3,698.63 Acres of Land, More or Less, in Burleigh, Emmons & Morton Cntys.*, 416 F.2d 65, 67 (8th Cir. 1969). By their

---

[6] In fairness to the First Circuit, it confronted a different scenario than the one before us—one in which it made no practical difference whether the evidence was considered under Rule 702 or Rule 71.1.

terms, the Federal Rules of Evidence apply to all federal court proceedings (with certain exceptions not relevant here). *See* Fed. R. Evid. 101(a) (Federal Rules of Evidence "apply to proceedings in United States courts"); Fed. R. Evid. 1101(d) (eminent domain proceedings not included in exceptions). Although Rule 71.1 has been amended more than half a dozen times since the Federal Rules of Evidence were adopted in 1975, nothing in the Rule or its advisory committee notes suggests that it should be read to modify the Rules of Evidence.

Accordingly, we conclude that the Federal Rules of Evidence govern in eminent domain proceedings in the same way as in other federal proceedings; Rule 71.1 does not alter them.

B.

That leads us to the question of what procedures the district court should apply when it *does* undertake the Rule 71.1 analysis. Once the district court makes its initial evidentiary determinations pursuant to the normal Rules of Evidence, it can proceed to the Rule 71.1(h) stage, where it must consider all admissible evidence together.[7] *See United States v. 105.40 Acres of Land, More or Less, in Porter Cnty.*, 471 F.2d 207, 212 (7th Cir. 1972) ("[T]he district judge should—upon proper consideration of the evidence—decide [an issue under Rule 71.1(h)]."). Exactly what that consideration looks like, however, appears to be an issue of first impression in any federal court. We conclude that, when a district court "tries

---

[7] District courts retain discretion to try issues under Rule 71.1(h) all at once or at different times, and we express no opinion as to whether the Rule 71.1(h) stage must come before or after the district court considers summary judgment motions.

[an] issue[]" of contested fact under Rule 71.1(h), the court must make findings of fact and conclusions of law on the record, as it would in a bench trial. Fed. R. Civ. P. 71.1(h); *cf.* Fed. R. Civ. P. 52(a)(1) ("In an action tried on the facts without a jury or with an advisory jury, the court must find the facts specially and state its conclusions of law separately.").

Genuine disputes of material fact are typically left for a jury to resolve. But in eminent domain cases under Rule 71.1(h), the drafters of the Federal Rules of Civil Procedure took some contested factual issues from the jury and gave them to the judge. These issues can be complex, such as in this case, where the judge must decide the reasonable likelihood of an entirely hypothetical buyer building an entirely hypothetical subdivision. The Rule 71.1(h) procedure is thus reminiscent of a bench trial, in which a trial judge must also resolve difficult questions of fact.

For that reason, when a district court resolves a contested factual issue under Rule 71.1(h), the court must make findings of fact and conclusions of law on the record for a reviewing court to be able to do its job effectively. We afford factual determinations in eminent domain cases significant deference on appeal—just as we do in bench trials— because the trial judge is best positioned to weigh the conflicting evidence. *Compare 269 Acres*, 995 F.3d at 164 (noting that, in eminent domain cases, we review the district court's weighing of various expert opinions and its "determinations of a property's highest and best use, the probability of future demand, and the ultimate award of just compensation . . . under the clear error standard"), *with Helton v. AT&T Inc.*, 709 F.3d 343, 350 (4th Cir. 2013) (noting that, in "review[ing] judgments stemming from a bench trial", we review factual findings for clear error). But, just as when contested factual issues are resolved in a

11

bench trial, the trial judge must be specific about the facts they found and their resulting legal conclusions for us to meaningfully perform our appellate review.[8] *See United States v. Pendergrast*, 241 F.2d 687, 689 (4th Cir. 1957) (per curiam) (explaining that the purpose of findings of facts in a bench trial "is to aid appellate courts in reviewing the decision below" (quoting *Hurwitz v. Hurwitz*, 136 F.2d 796, 799 (D.C. Cir. 1943))). It would otherwise be difficult to conduct our review as to whether a district court's Rule 71.1(h) determinations were "guided by erroneous legal principles or rest[ed] upon a clearly erroneous factual finding." *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 261 (4th Cir. 1999) (citation omitted); *see St. Genevieve Gas Co. v. Tenn. Valley Auth.*, 747 F.2d 1411, 1413–14 (11th Cir. 1984) (articulating the clearly erroneous standard in an eminent domain case).

When a party has demanded a jury, however, district courts may not resolve the "precise issue" of compensation under Rule 71.1(h). *Reynolds*, 397 U.S. at 20. The court may, of course, grant summary judgment on that issue if there is no genuine dispute of material fact. *See, e.g.*, *Mountain Valley Pipeline, LLC v. 0.15 Acres of Land Owned by Hale in Roanoke Cnty.*, 827 F. App'x 346, 347 (4th Cir. 2020) (per curiam) (affirming district court grant of summary judgment to condemnor on the amount of compensation

---

[8] We need not, and therefore do not, decide whether the other procedural requirements of bench trials apply when a district court "tries . . . issues" under Rule 71.1(h).

when the landowner failed to present any evidence on that issue). Otherwise, the court must convene a jury to determine compensation.[9]

At that point, the district court should exclude from the jury trial evidence inconsistent with its Rule 71.1(h) determinations. *See Reynolds*, 397 U.S. at 20 ("[I]t is for the judge to tell the jury the criteria it must follow in determining what amounts will constitute just compensation[.]"). In the interest of fairness, we think that district courts should—when possible—strike only the portions of testimony that are inconsistent with their factual Rule 71.1(h) determinations, rather than excluding the testimony as a whole. *See, e.g.*, *E. Tenn. Nat. Gas Co. v. 2.93 Acres in Wythe Cnty.*, No. 4:02-CV-00179, 2007 WL 2688414, at *6, *9 (W.D. Va. Sept. 13, 2007) (excluding from a jury trial the portion of Gruelle's testimony on highest and best use but admitting the remainder). However, we leave for another day whether courts are *required* to do so.

To summarize, a court hearing an eminent domain case should make determinations of evidentiary admissibility using the standard Federal Rules of Evidence. Once it has established the admissible universe of evidence, it may try non-compensation issues under Rule 71.1(h) based on that evidence and should make findings of fact and conclusions of law on the record. The court may grant summary judgment if no genuine disputes of

---

[9] We do not address cases in which the district court elects to appoint a commission rather than convene a jury under Rule 71.1(h)(2), such as *269 Acres, More or Less*, 995 F.3d at 162, or when compensation must be determined by a "tribunal specially constituted by a federal statute" for that purpose under Rule 71.1(h)(1)(A).

13

material fact remain. Otherwise, it should exclude evidence inconsistent with its Rule 71.1(h) determinations from the jury trial.

## III.

Turning to the case at bar, the district court granted MVP summary judgment on the issue of just compensation because it concluded that Reynolds provided no admissible evidence on that subject. Accordingly, the issue before us is whether the district court properly excluded the Gruelle Report under the Federal Rules of Evidence, and the Horne Report under Rule 71.1(h). It did not, so we vacate and remand for further proceedings.

## A.

We review evidentiary determinations for an abuse of discretion. *Westberry*, 178 F.3d at 261. "A district court abuses its discretion if its conclusion is guided by erroneous legal principles or rests upon a clearly erroneous factual finding." *Id.* (citation omitted). We conclude that the court applied erroneous legal principles by concluding that Rule 71.1(h) increased its discretion to exclude the Gruelle Report under the Federal Rules of Evidence, rather than applying normal evidentiary standards.

The district court excluded the Gruelle Report under *Daubert* and Rule 702, but it challenged the accuracy of Gruelle's *facts* rather than his methodology or qualifications. While courts may exclude an expert opinion under Federal Rule of Evidence 702 if it is not based on "*sufficient* facts or data," Fed. R. Evid. 702(b) (emphasis added), "questions regarding the factual underpinnings of the expert witness' opinion affect the weight and credibility of the witness' assessment, not its admissibility," *Bresler v. Wilmington Tr.*, 855 F.3d 178, 195 (4th Cir. 2017) (quoting *Structural Polymer Grp. v. Zoltek Corp.*, 543 F.3d

987, 997–98 (8th Cir. 2008)) (cleaned up). Neither MVP nor the district court contended that sales comparison was an inappropriate methodology, or that Gruelle was an unqualified appraiser. Rather, the court disagreed with the facts underlying Gruelle's comparable sales. It found that "[b]ecause two of the three sales relied upon by Gruelle do not provide the value of a property encumbered by a pipeline easement, Gruelle's opinion is based on insufficient data and is unreliable." *9.89 Acres of Land*, 2021 WL 4398032, at *4. But this Court has repeatedly held (in unpublished cases) that *Daubert* challenges to the comparability of sales in a sales comparison analysis go to weight and not admissibility.[10] *See E. Tenn. Nat. Gas Co. v. 7.74 Acres in Wythe Cnty.*, 228 F. App'x 323, 329 (4th Cir. 2007) (citation omitted) (holding that challenge to comparability of sales did not present a "true *Daubert* challenge" to methodology, so inclusion should be affirmed); *Columbia Gas Transmission, LLC v. 76 Acres, More or Less, in Balt. & Hartford Cntys.*, 701 F. App'x 221, 229–30 (4th Cir. 2017) (citing *7.74 Acres in Wythe Cnty.*, 228 F. App'x at 329) (same).

Furthermore, it is not at all clear that the district court decided these factual issues correctly, thus illustrating the dangers of resolving factual disputes at the evidentiary stage. The court first found that "there is no evidence" that the buyer in Sale One was aware of

---

[10] Other circuits have recognized an exception to this rule for threshold legal issues such as whether a sale was arms-length or forced. *See, e.g.*, *United States v. 55.22 Acres of Land, More or Less, in Yakima Cnty.*, 411 F.2d 432, 434 (9th Cir. 1969) (affirming exclusion of non-arm's-length sale); *United States v. Certain Land in Ft. Worth*, 414 F.2d 1029, 1031–32 (5th Cir. 1969) (affirming inclusion of non-forced sale). Because those questions are not at issue here, we do not opine on whether we would adopt a similar exception.

the possibility of an MVP easement, so Gruelle could only speculate that the project affected the sales price. *9.89 Acres of Land*, 2021 WL 4398032, at *4. But the court failed to consider strong evidence that the buyer *was* aware of the project: the buyer *admitted to MVP's expert* that he agreed at the time of sale that he would receive any future compensation for MVP's easements on the property. J.A. 547.

The court then struck Sale Two—even though that sale undisputedly occurred after MVP was granted possession of the property—because it found that the buyer did not have knowledge of the taking. Again, however, the court's finding is not well supported.

The court cited an affidavit given by the buyer, made in a separate proceeding to which Reynolds was not a party, stating that he had no knowledge of the taking and should therefore be granted just compensation. *9.89 Acres of Land*, 2021 WL 4398032, at *4 (citing First Mot. for Leave to File Answer to Am. Compl., Ex. C at 2, *Mountain Valley Pipeline, LLC v. Easements to Construct, Operate & Maintain a Nat. Gas Pipeline over Tracts of Land in Giles Cnty.*, No. 7:17-cv-492 (W.D. Va. May 15, 2019), ECF No. 1247-1). But the district court in that case ruled against the buyer and never determined whether he had knowledge of the taking. Mem. Op., *Easements to Construct, Operate & Maintain*, No. 7:17-cv-492 (W.D. Va. June 1, 2020), ECF No. 1440. And there is good reason to suspect that the buyer *did* have knowledge of the taking, despite his self-interested testimony. Notably, the two properties in Sale One and Sale Two are adjacent to one another; were subject to easements based on the same pipeline project, of which MVP was granted possession in the same month; and *were purchased by the same buyer*. Def. Lenora W. Montuori's Reply Mem. in Supp. of Mot. to Dismiss Def. Venkat Reddy at 6,

16

*Easements to Construct, Operate & Maintain*, No. 7:17-cv-492 (W.D. Va. June 5, 2019), ECF No. 1269. Further, that buyer was made a party in the condemnation case for Sale One in March of 2018, the same month that MVP was granted possession of the easements over both properties. Order Granting Mot. to Substitute Parties, *Easements to Construct, Operate & Maintain*, No. 7:17-cv-492 (W.D. Va. Mar. 22, 2018), ECF No. 741. The buyer bought the property in Sale Two a month later, arguably with full knowledge of the easement.

In sum, the district court applied a higher standard for admissibility to the Gruelle Report than is required under Rule 702. We vacate and remand its decision excluding the Gruelle Report for the district court to perform a standard Rule 702 analysis.

### B.

Similarly, we hold that the district court's exclusion of the Horne Report under Rule 71.1(h) was defective and requires vacatur and remand for further proceedings. We reach this conclusion for three reasons.

First, because the district court did not have the benefit of our holdings above requiring it to make findings of fact and conclusions of law on the record during its Rule 71.1(h) analysis, it did not do so. As discussed above, that omission hobbles our ability to conduct an effective review. For example, it is not clear if the court thought that Horne's proposed highest and best use of residential subdivision was factually unlikely to occur, or whether the state was unlikely to approve new public roads for the subdivision.

17

Second, if the district court concludes on remand that the Gruelle Report is admissible, it will need to consider that admissible evidence—together with the Horne Report and MVP's evidence—in conducting the Rule 71.1(h) analysis.

Finally, the district court applied the wrong substantive legal standard to its evaluation of the Horne Report. To show a highest and best use different from the current use, a landowner must show that the proposed use is reasonably probable in the reasonably near future. *8.929 Acres of Land*, 36 F.4th at 253. In this case, that meant Reynolds must show that, absent the taking, a buyer would be reasonably likely to use her land for residential subdivision in the reasonably near future.

The district court, however, seemed to tack on an additional requirement: that, because the local zoning ordinance required additional public roads if a subdivision was to be built on her land, Reynolds must make an independent showing that the state would be likely to accept those new roads or that the zoning ordinance would be changed. *9.89 Acres of Land*, 2021 WL 4398032, at *5. In seeking to defend the district court's decision, MVP analogizes to cases holding that, when a proposed use requires a permit, license, or rezoning, the landowner must show that the requirement is reasonably probable to occur.[11]

---

[11] *E.g.*, *8.929 Acres of Land*, 36 F.45 at 264 ("For any use that requires a permit, license, or rezoning, it must be shown that there is a reasonable probability that such permit or license will be issued or that a re-zoning will occur to make the use legal." (quotations omitted)); *33.92356 Acres*, 585 F.3d at 7 ("If a claimed use is prohibited by zoning, the property owner must show that it is reasonably probable that the relevant restrictions will be removed in the reasonably near future."); *United States v. 320.0 Acres of Land, More or Less in Monroe Cnty.*, 605 F.2d 762, 819 (5th Cir. 1979) (holding that judge must find

We agree that, for a project to be reasonably probable, all necessary conditions to that project must be reasonably probable. Where we part ways with MVP (and the district court) is on whether the landowner must make an *independent* showing as to each condition. A new residential subdivision surely requires myriad approvals from state and local authorities for amenities like water, sewer, and electricity. It would be impractical—and unnecessary—to require separate showings on each approval, so long as the landowner can show that the project as a whole is reasonably probable to occur in the reasonably near future. The district court should consider the admissible evidence together at the Rule 71.1(h) stage to determine whether Reynolds's proposed use was reasonably probable.

## IV.

In eminent domain cases, district courts should first make threshold determinations of evidentiary admissibility under the standard Federal Rules of Evidence. The court should then consider all admissible evidence together at the Rule 71.1(h) stage and make findings of fact and conclusions of law as to non-compensation issues. Finally, if it does not grant summary judgment, the court should exclude evidence inconsistent with its Rule 71.1(h) determinations from the jury trial on the issue of just compensation. We vacate and remand for the court to apply this procedure.

*VACATED AND REMANDED*

---

a "reasonable possibility" of rezoning to allow proposed use to go to jury); *United States ex rel. Tenn. Valley Auth. v. 1.72 Acres of Land in Tenn.*, 821 F.3d 742, 754 (6th Cir. 2016) (affirming exclusion of expert who failed to show reasonable probability of rezoning because that implied failure to show overall reasonable probability of proposed use).

19